JAMES MONNAHAN *vs.* EDWARD C. JUDD.

Suffolk.   November 15, 1895. — January 2, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Exceptions — Services rendered — Contract — Ratification — Action.*

No exception lies to the refusal to give an instruction in the terms requested, if it is given in substance.

Where a third person without previous authority employed the plaintiff to work for the defendant, a ratification by the defendant of such employment may be found from evidence showing, to the satisfaction of the jury, that the defendant, while the work was going on, promised the plaintiff to pay him, knowing at the time that the plaintiff understood and believed that he was working for the defendant, and that the defendant was to pay him.

CONTRACT, upon an account annexed, to recover a balance of $114 for "labor and services in putting in gas plant at Rockland, Maine, from February 12 to April 7, 1894." Answer: 1. A general denial. 2. That the defendant "never employed the plaintiff to perform any work whatever." Trial in the Superior Court, before *Mason,* C. J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified that he performed labor in putting in a gas plant in Rockland, Maine; that one Rowe employed him; that he asked Rowe whom it was for, and he said for the defendant; that the plaintiff went to Rockland on February 12, 1894; that he first saw the defendant at the cars, and the latter told him "to go ahead, — go down and do the best you can, and I will see that you come out all right"; that he went to work in Rockland the next morning, and worked until March 21, when the defendant came there, and he asked him, "Did you send my wife any money yet?" and he said, "No"; that the plain

tiff then said, " I am going home in the morning then " ; that the defendant told him he wanted him to run that afternoon, and the plaintiff told him he would not, and said he wanted to see where his money was coming from before he ran ; that the defendant said, " If you go to work, I will pay you what is due you, and see that you receive it in the future."

The plaintiff further testified as follows : " He asked me then what it was. I told him $84 was the balance, at $20 a week. He says, 'I ain't got much money with me, but I will give you five dollars,' and he paid me five dollars. He asked me what was due, and I told him $84. He says, ' Do you want your wife to receive it all ? ' I says, ' No, I want enough to clear me down here,' and he said, ' I will send the balance to your wife.' He then gave me the five dollars, and said, ' Just as soon as I get home, I will send you enough to clear you here, and send the balance to your wife,' and repeated it over. Then I told him on those conditions I would stay, and no other. Then I said to him, ' Is Mr. Ricker coming down ? ' He said, ' He said he was coming down here, but I don't see what good he can do down here. I will tell him to wait till I get home.' He spoke out to me and said, ' Go ahead, and wait until I get back.' "

The plaintiff also testified that he was employed there eight weeks in all ; that he quit work because parties concerned in the acceptance of the plant refused to have anything more to do with the gas ; that they stopped the running of the plant and he had to stop with it ; that the amount then due was $160 ; that he received on account of it the sum of $51 ; that there was $109 due instead of $114 ; and that he had never received any part of that balance.

On cross-examination, he testified that, previously to February 12, he was working for the Wilder Gas Company ; that Rowe, the man who told him to go to Rockland, was supposed to be the superintendent of the Wilder Gas Company ; that he was given to understand, the week previously to his going to Rockland, by Dr. Wilder, when he was paid his wages, that that was the last money he would receive ; that he saw Wilder the morning he went to Rockland, but that he gave him no instructions ; that he received his instructions from the defendant ; that he gave him a letter and told him to give it to Ricker, and said, " Do the

best you can, and I will see that you come out all right "; that was all the instruction he had; that his wages, when employed by the Wilder Gas Company, were two dollars a day; that Rowe told him the wages he would receive at Rockland would be $20 a week; and that the first money he received at Rockland was five dollars from Ricker, who made him in all four payments, amounting to $31.

John Rowe, Jr., testified that he had been superintendent of the Wilder Gas Company Process for the last four or five years; that he engaged the plaintiff to go to Rockland; that he was expected to go down, but was taken sick; that he sent for the plaintiff and told him that he was to go down; that the plaintiff wanted to know what the price would be, and he told him he was to get $20 a week and he was to pay his own expenses; that it was understood by the witness and by the plaintiff that the defendant was to pay; that he told the plaintiff that the defendant was to pay him; and that the defendant wanted the witness to go to Rockland, and advanced some money for him to go with.

The witness further testified as follows: " I told the defendant that the plaintiff had n't his pay and needed it; he said, ' I have given Mr. Ricker sufficient to pay all labor bills, and I will look into it to see why it was n't done,' but had no further talk about the plaintiff. I met the defendant at Rockland; he came to Rockland and wanted the plant run so a gentleman he had brought with him could see it; the plant was not running at that time; it had been running, and had stopped for the day. The defendant wanted to know if we could get steam up for that afternoon. I told him the plaintiff had left, and it would require two to do it, and he said, ' Find him.' I found him, and we went to the works. The plaintiff then told the defendant he would not go to work until he paid him for what he had done and what he was told to do, and the defendant said, ' Go to work; I will pay you.' . . . The talk between the plaintiff and the defendant in my presence was that he was to pay for what he had done and for the future, and to keep on. The plaintiff said he would not work any more unless he could get his pay. He said, ' I will pay you for the past and pay you for the future if you will keep at work.' The plaintiff said, ' All right, I will go to work.' "

On cross-examination, the witness testified that he employed the plaintiff to go to Rockland, as he had employed others ; that his relation to the Rockland matter was " supposed to be superintendent of construction for all plants that were put up " ; that he was superintendent of the Process for the Wilder Gas Company. His examination was continued as follows :

" *Q.* As superintendent of the Wilder Gas Company you employed the plaintiff to go to Rockland ; is not that so ? *A.* I cannot say it was the Wilder Gas Company because I do not think — yes, it was a company.

" *Q.* You were superintendent for somebody ? *A.* According to my agreement I was superintendent for L. A. & C. H. Wilder.

" *Q.* And by virtue of that agreement you employed the plaintiff ? *A.* Yes, since my connection with the Process.

" *Q.* Did you ever see the defendant in relation to the employment of the plaintiff ? *A.* No, sir ; I was sick.

" *Q.* Did the defendant ever authorize you to employ the plaintiff to go to Rockland ? *A.* No, sir.

" *Q.* You employed the plaintiff ? *A.* I did ; told him he was to be paid by the defendant.

" *Q.* Without authority from the defendant ? *A.* No, not personally from him."

The defendant testified that he was a manufacturer and dealer in shoe machinery ; that he saw the plaintiff on the morning of February 12, but had no extended conversation with him ; that he said to him, " Do the best you can " ; that he did not employ him to go to Rockland ; that he had no interest in this business ; that he went to Rockland on March 21 to inspect the plant, in company with one Averill, who was acting in the interest of a party of gentlemen ; that he did not have the conversation with the plaintiff at Rockland, as testified to by him ; that Ricker was in no way acting for the defendant or in his interest ; and that he had no interest in the Wilder Gas Process nor any privileges in it, nor any contract with anybody that he was to put up that plant, nor any understanding in regard to it.

Luke A. Wilder testified that he knew the plaintiff ; that he was employed by the Wilder Gas Company from February 12 to April 9, 1894 ; that he had no remembrance of any conversation with the plaintiff to the effect that the Wilder Gas Com-

pany would pay him no more money; that the plaintiff went to Rockland at the suggestion and wish of the witness; that the witness instructed him in regard to his duties at Rockland and paid his fare to Rockland; and that nothing was said about his wages at Rockland.

Oliver P. Ricker testified that in February, 1894, he undertook to put in a plant at Rockland under a contract with people there; that the plaintiff worked on this plant; that the defendant had nothing to do with it in any way; that he paid the plaintiff some money for the reason that he had sent to the company for money and failed to get it, and had nothing to pay his board with; that the plant was furnished by the Wilder Gas Company; and that the plaintiff's occupation at Rockland was to put the plant in order to run.

At the close of the evidence, the defendant requested the judge to instruct the jury as follows:

"1. Upon all the evidence the plaintiff is not entitled to recover in this action, and the verdict must be for the defendant.

"2. If the Wilder Gas Company or L. A. Wilder still remains liable to the plaintiff for the labor performed at Rockland, then the defendant is not liable."

The judge refused to instruct the jury as requested, but instructed them as follows:

"Upon the pleadings as this case stands, and upon the evidence that has been introduced in it, there can be no recovery against the defendant for the debt of the Wilder Gas Company. If the Wilder Gas Company employed the plaintiff, and the services in question were rendered for the Wilder Gas Company, there can be no recovery in this case.

"Now the plaintiff contends that, although he had been at work for the Wilder Gas Company when this matter of going to Rockland came up, he was employed by Rowe to go to Rockland for the defendant, and, although it is stated now that Rowe had not then authority to make that contract for the defendant, it is claimed that the defendant's conduct ratified that act of Rowe and made it binding upon him; and it is such an act on the part of an agent to act for him as can be ratified, if it was not in fact ratified by him. If his conduct after that showed that he expressly ratified the act of Rowe, or gave this plaintiff to

understand that he ratified it, then he was just as much bound by it as though Rowe had a power of attorney under seal. Now it is contended that, although he may not have given Rowe the authority, and although he may not have, in terms and by explicit words or by explicit action, ratified the agreement which Rowe made in his behalf, that still service was rendered for him, and thus, by application of law, he must pay a reasonable sum.

" Now, if the evidence satisfies you that this service was rendered for the defendant, then he must pay for it; if he ratified the agreement of Rowe, he must pay for it upon the special agreement that Rowe made. Otherwise, he must pay what it is shown to be reasonably worth, not exceeding the amount claimed, $20 a week. The claim on the part of the plaintiff is that, although he had been receiving $12 a week for work of a similar character done under different conditions when at home, when he went out to a distant place to take charge of the work and be responsible directly for it, to perform it under a different state of things, being obliged to be away from home and at the expense of board, that $20 a week charged is not beyond what it is reasonably worth even measured by what had been paid him for services of the same character performed under different conditions. But that is a question for you. The question is simply this. If he. made a special contract, which it is claimed was made through Rowe and ratified subsequently by the defendant, to pay $20, then it is of no consequence whether it was worth $20 or not, or whether it was worth many times $20, that is all he could have. But if he did not make a special contract, but did perform the service for the defendant, then he is to have what it is worth, not exceeding the amount claimed in the declaration."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*A. T. Johnson,* for the defendant.

*J. B. Lord,* for the plaintiff.

ALLEN, J.   The defendant's second request for instructions was given in substance, though not in express terms. The defendant's rights as to this were fully saved by the instructions which were given.

The first request was, that upon all the evidence the plaintiff

was not entitled to recover. The plaintiff contended, amongst other things, that Rowe employed him to render the services for the defendant; and that if Rowe was acting without the defendant's authority in doing this, yet the defendant afterwards ratified and adopted his act. There was evidence tending to support this view. The plaintiff and Rowe Jr. both testified that, when the plaintiff refused to go on with the work, the defendant promised to pay him for past and future work, if he would keep on. The defendant however contends that it did not expressly appear that he knew that the plaintiff was working under a contract or promise of pay made by Rowe, in his, the defendant's name and behalf; citing *Dickinson* v. *Conway*, 12 Allen, 487; *Combs* v. *Scott*, 12 Allen, 493; *Murray* v. *Nelson Lumber Co.* 143 Mass. 250; *Manning* v. *Leland*, 153 Mass. 510. The essential point of this is, Did the defendant know that the plaintiff understood and believed that he was working for the defendant, and that the defendant was to pay him? There was evidence sufficient to warrant a finding that he did. The plaintiff testified that at the outset the defendant told him to go ahead and do the best he could, saying, " I will see that you come out all right." There was some evidence tending to show that in point of fact the defendant was the chief person interested in having the work done; that he had undertaken to furnish to one Ricker money sufficient to pay all labor bills; that he employed Rowe to go to Rockland, advancing money to him for the purpose; that, when the defendant afterwards went to Rockland, the plaintiff in conversation with him assumed that the defendant was the person who was to pay him, and asked the defendant if he had sent any money to the plaintiff's wife yet, and on being answered, " No," said he should go home in the morning then; that the defendant then promised, if the plaintiff would go to work, to pay what was already due, and see that the plaintiff should receive it in the future; that the amount due and the rate per week were ascertained, and arrangements made for sending a part of the amount to the plaintiff, and the rest to his wife. If these statements were believed, the jury might infer that the defendant knew that the plaintiff thought he was working for the defendant, and looked to the defendant for his pay, at the rate which was mentioned. These were the essen-

tial facts, and it would not be material that he should know whether the actual engagement of the plaintiff was made by Rowe, Ricker, or Wilder.

The request for instructions was therefore rightly refused; and we do not consider whether the jury might not also have been allowed to find for the plaintiff on the ground that the defendant made a distinct and independent promise, as in *Abbott v. Doane*, 163 Mass. 433.                    *Exceptions overruled.*