ARTHUR BISHOP *vs.* FRANK L. BURKE.

Essex.　　November 1, 1910. — November 30, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Evidence,* Presumptions and burden of proof. *Corporation.　Deed,* Execution, Delivery.　*Agency,* Ratification of acts of agent.　*Land Court,* Appeal, Report as evidence.　*Practice, Civil,* New trial of issues from Land Court.

On an appeal to the Superior Court from a judgment in a writ of entry before the repeal of St. 1905, c. 288, making it the duty of the judge of the Land Court to file a report of his findings of fact which should be *prima facie* evidence of the facts therein stated, the report of the judge of the Land Court, who had found for the tenant, stated in substance that the land in question had been conveyed by a certain corporation to an unincorporated religious society subject to a condition subsequent, that, after the condition subsequent had been broken but without the corporation's making an entry upon the land, its treasurer signed and sealed in the name of the corporation a deed of the premises to the tenant and handed the deed to him ; that thereafter the unincorporated religious society gave a deed of the premises to the demandant; that subsequently the corporation by an officer duly authorized made an entry upon the land and gave a proper deed to the tenant; that, although, if the treasurer of the corporation was authorized to sign the deed in its behalf, the deed would have operated as an extinguishment of the right of entry for breach of the condition subsequent and would have given to the unincorporated society an absolute power of disposal, he found that the treasurer was not so authorized, and therefore found for the tenant. One issue framed for the jury was, whether the first deed, which purported to be that of the corporation, was authorized by it. The deed itself, purporting to be signed in the corporation's name by its treasurer and to be

duly acknowledged by the treasurer as its deed, was in evidence, as well as certain votes of the executive committee of the corporation having power to dispose of the corporation's land, which in substance referred the matter of the sale of the land to the treasurer " with power." *Held*, without passing on the question whether the effect of the deed, if valid, would be that stated by the judge of the Land Court, that the issue as to whether the deed in question was authorized by the corporation was for the jury.

On the question, whether there was any authority for the execution and delivery of a deed, signed in the name of a corporation by its treasurer, bearing the corporation seal and acknowledged as the deed of the corporation by the treasurer, the deed itself is evidence.

Evidence, that the treasurer of a corporation, who was authorized to make a sale of land of the corporation, in an attempted completion of a sale of the land, handed a deed of the land to the person named as grantee therein, who retained the deed in his possession and control for more than three months, is evidence that the deed was duly delivered to such person.

Although, by accepting the purchase price paid for certain of its land, a corporation may have ratified the acts of an officer who had assumed to sell the land on its behalf, it does not thereby ratify his act in executing to the purchaser in the name of the corporation a deed, the effect of which would be to prevent the carrying out of the sale.

On appeal to the Superior Court from a judgment of the Land Court in a writ of entry, the determination of which depended upon whether or not a deed, which purported to be executed on behalf of a corporation by one of its officers in completion of a sale previously made by the officer on behalf of the corporation, was authorized and delivered by it, three issues were framed and submitted to the jury, the first being, whether the deed was authorized by the corporation, the second, whether it was delivered to the purchaser, and the third, whether its execution and delivery were ratified by the corporation. The presiding judge directed that all the issues be answered in the negative. The tenant alleged exceptions. This court held that there was evidence which would have warranted affirmative answers to the first and second issues, but that, because the execution and delivery of the deed by the corporation would have been in direct contravention of the act which was relied on as an act of the corporation in ratification of the deed, further held that the verdict on the third issue was ordered properly, and *therefore directed* that there should be a new trial on the first and second issues, and that the verdict on the third issue should stand.

WRIT OF ENTRY to recover possession of certain real estate in Rowley. Writ in the Land Court dated April 14, 1908.

In the Land Court the case was heard by *Davis,* J., who found for the tenant and filed the following report:

" The land in controversy in this case is situated on the westerly side of Central Street in the town of Rowley, and was formerly the property of, and occupied by, the First Universalist Parish of Rowley. A small strip of land covered by the writ is not in controversy and a disclaimer has been filed in regard to it.

" In January, 1878, title to the land in controversy was

conveyed by said Parish to the Massachusetts Universalist Convention for the purpose of having it re-conveyed by the Convention upon condition that in case said Parish should fail to maintain preaching by a clergyman in fellowship with said Convention, or should itself fail to continue in such fellowship for a period of two consecutive years, the land should revert to the Convention, and on April 29, 1878, the land was accordingly re-conveyed by the Convention to the Parish, upon condition as above stated, and with express provision that on breach of said condition the premises should revert to said Convention.

" Subsequently preaching was discontinued on the demanded premises, and there was an entire breach of the condition in said deed from the Convention to the Parish.

" In 1905 there were some negotiations, but without result, between officers of the Convention and officers of the Parish looking toward a release of title by the Parish to the Convention. The Convention is a Massachusetts corporation. In its popular acceptation, however, the 'Convention' is merely the annual meeting of the corporation, at which religious affairs appertaining to the Universalist Church in this State are discussed and voted upon. No property rights of the corporation are discussed or voted upon at the annual meeting of the Convention, but under section 5 of article 5 of the by-laws of the corporation an executive committee is provided for who 'shall have charge of the general interests of the Convention, direction of its business operations, the disposition of its real estate or any interests therein by sale, lease or otherwise'; and by section 4 of said article 5 a treasurer is provided for who 'shall execute in proper form deeds, leases or other instruments affecting any real estate owned or controlled by this Convention, with the approval of the executive committee.'

" In November, 1905, the demandant made an offer for the demanded premises to the secretary of the Convention, who communicated the offer to the executive committee, and on November 8, 1905, notified the demandant that 'our board met last Monday and gave the treasurer personal discretion in the matter, so I presume he will decide this week what to do.' No further action was taken in regard to the matter at that time, however. In April, 1906, the executive committee voted that the treasurer

of the Convention be authorized to enter upon and take possession of the real estate of the First Universalist Parish of Rowley for breach of conditions in the deed to said Parish by the Convention. In June, 1907, a report was submitted to the executive committee advising the raising of funds by the Convention for the payment of a certain mortgage on church property in Boston, ' by the sale of properties once held and used by edifices now defunct, for example, Rowley ' and others, and ' on motion of Brother Horton it was voted to refer this whole matter to the Secretary and Treasurer with power.' In December, 1907, the tenant saw the secretary of the Convention and made to him an offer of $800 for the demanded premises, together with a small strip of adjoining land, not now in controversy, and the secretary referred the offer to the treasurer. Thereafter the treasurer undertook to have a deed prepared. On December 23, 1907, the tenant met the treasurer in the office of the Convention, paid him $800, and received an instrument purporting to be a quitclaim deed from the Convention corporation to himself of land including the demanded premises, executed in the name of the corporation by the treasurer, with a paper facsimile of the corporation seal affixed, and acknowledged by the treasurer to be the free act and deed of the corporation. When this deed was delivered by the treasurer to the tenant it was delivered with the statement that it lacked a vote confirming it, and also that the Convention was to have a new deed from the Parish ' free from restrictions,' and with a request that this deed should not be recorded until the receipt by him of the other instruments. At a meeting of the executive committee on January 6, 1908, ' the treasurer, Mr. Buttrick, reported the sale by the Convention through its treasurer of the church property at Rowley to Frank L. Burke for $800 cash, and the addition of that amount by him to the permanent funds of the Convention.' The tenant within a week thereafter entered upon the demanded premises, and made an offer to sell them to the demandant, and within a month had the building shingled, and stored property there. After the tenant received said deed of December 23, 1907, counsel was consulted, and on March 25, 1908, the tenant returned said deed without its ever having been recorded.

" On April 6, 1908, the executive committee voted that the

treasurer be authorized in behalf of the Convention to enter upon and take possession of the land described in the deed from the Convention to the Parish of April 29, 1878, for breach of the condition contained in said deed and for the purpose of revesting the title in the Convention; on April 10, 1908, a certificate of such entry was recorded in the Registry of Deeds; and on the same day a new deed from the Convention to the tenant of land including the demanded premises, reciting said deed from the Convention to the Parish, breach of condition therein and entry made and possession taken for such breach of condition, was executed in behalf of the Convention by the treasurer, and delivered to the tenant, accompanied by a certified copy annexed thereto of a vote of the executive committee passed on April 6, 1908, authorizing the treasurer to sign, seal, acknowledge and deliver said deed to the tenant. This deed also was recorded on said April 10, 1908. On May 4, 1908, the executive committee voted that ' the treasurer be authorized to give Mr. Burke a bond for $800 to indemnify him against possible loss for pending litigation over the title to the property deeded to him by this Convention in exchange for the purchase price of $800.

" Meantime, at a meeting of the Parish held on February 17, 1908, the Parish voted to sell all the property, real or personal, that remained in their hands as a Parish at public auction on February 29, 1908, and that the Standing Committee be authorized to give a quitclaim deed or deeds of the same to the purchaser. An auction was held accordingly. The demandant bid $150 for the remaining property of the Parish, including the demanded premises, was the highest bidder therefor, and it was knocked down to him by the auctioneer; and on said February 29, a quitclaim deed of the land including the demanded premises was executed in behalf of the Parish by its Standing Committee to the demandant, delivered to him, and by him recorded on March 10, 1908.

" As matter of law an attempted grant of land held on condition made by the holder of the right of reverter or right of entry for breach, before such entry is made, does not operate to convey the property to the attempted purchaser, but operates merely as an extinguishment of the condition. It seemed to me on the foregoing evidence clear that whatever authority the Con-

vention had delegated to any of its officers in regard to this property, was authority in regard to a sale, and in regard to a sale only, of the real estate. There was no intention manifested to release the condition, and no authority voted to any one looking thereto, or to any other action than a sale of the property for its full value, and the execution of instruments proper to effectuate such sale.

" On the foregoing evidence therefore I ruled that the deed of ·December 23, 1907, from the Convention to the tenant was not authorized by the grantor corporation therein named, and further ruled that it was not ratified by the subsequent votes or action of the executive committee above recited, in regard to the $800 received from the tenant or otherwise. I therefore found for the tenant and ordered judgment accordingly."

The demandant appealed to the Superior Court and the following issues were framed:

" 1. Was the instrument dated December 23, 1907, purporting to be a deed from the Massachusetts Universalist Convention to Frank L. Burke, authorized by said Convention?

" 2. Was said instrument duly delivered to the tenant?

" 3. Was the execution and delivery of said instrument to the tenant duly ratified ? "

In the Superior Court the case was tried before *Fox*, J. The report of the judge of the Land Court was in evidence. The deed dated December 23, 1907, referred to in the first issue, also was in evidence. This was signed, " Massachusetts Universalist Convention, by Sidney H. Buttrick, Treasurer," and bore a seal purporting to be the corporate seal, and an acknowledgment by Sidney H. Buttrick that it was " the free act and deed of the Mass. Universalist Convention."

There was evidence that, when the deed was handed to the tenant by the treasurer of the Convention, there was nothing said as to its validity. The treasurer, however, testified as follows: " When I handed him [the tenant] the instrument of December 23, 1907, I told him that possibly this was not a valid deed, that I didn't consider it so, that we had had information from the clerk of the Rowley church that they would prepare a deed deeding the property to the Universalist Convention at any time we wished, and I expected to get a deed from them ;

in the event I didn't get this deed it would be necessary to have other papers to have this deed valid, and for him to hold it and not put it on record as I didn't consider it a valid deed. I am sure that this conversation occurred when I gave this deed to Mr. Burke, and not at a later date."

At the close of the evidence the presiding judge directed the jury to answer each of the issues in the negative; and the demandant alleged exceptions.

The case was submitted on briefs.

W. A. Bishop, for the demandant.

G. B. Blodgette, for the tenant.

SHELDON, J.   The correctness of the rulings made at the trial depends, as to each one of the issues, upon the question whether there was any evidence tending to prove the affirmative of that issue.   The report of the judge of the Land Court made a prima facie case for the tenant, and required a negative answer to each issue unless there was some evidence to the contrary.   See St. 1905, c. 288, which had not been repealed when the appeal in this case was taken and entered.*   It was assumed, although that question is not before us and we express no opinion upon it, that if these issues were found in the affirmative, the effect of the tenant's first deed, from a grantor having then merely the right to enter for breach of a condition and not holding any estate in the land, was merely to extinguish or suspend that right of entry and the condition upon which it depended, and to give an absolute power of disposal to the general owner, under whom the demandant claims.   Thompson v. Bright, 1 Cush. 420, 428.   Guild v. Richards, 16 Gray, 309, 317.   Hubbard v. Hubbard, 97 Mass. 188.   Hopkins v. Smith, 162 Mass. 444, 447.

1.  Without passing at all upon its weight, we are of opinion that there was evidence that this deed was authorized by the Convention.   The bare production of the deed, duly executed in its name by its treasurer, with its corporate seal affixed, was some evidence that its execution and delivery had been authorized.   Burrill v. Nahant Bank, 2 Met. 163.   Parker v. Washoe Manuf. Co. 20 Vroom, 465.   Crumlish v. Railroad, 32 W. Va. 244.   Reed v. Bradley, 17 Ill. 321.   Smith v. Smith, 62 Ill. 493, 497.   The authority which it could be found had been

* The repealing statute is St. 1910, c. 560, § 2.

given to sell this property could be found to include authority to execute whatever deeds were thought necessary to pass the title. *Alger* v. *Fay*, 12 Pick. 322. *Valentine* v. *Piper*, 22 Pick. 85, 90.

2. As to the second issue, the testimony that the deed had been handed to him by the treasurer of the Convention in the attempted completion of a sale which the treasurer was authorized to make, and that it had for more than three months remained in the possession and control of the tenant, was evidence that it had been duly delivered to him. *Ward* v. *Lewis*, 4 Pick. 518, 520. *Valentine* v. *Wheeler*, 116 Mass. 478. *Butrick* v. *Tilton*, 141 Mass. 93. *Jones* v. *New York Life Ins. Co.* 168 Mass. 245. There was also evidence that there had been no absolute unconditional delivery of the deed; but the question was for the jury. Whether the demandant would derive any benefit from prevailing upon this issue if he failed to support the affirmative of one of the other issues, we have not now to consider.

3. The verdict upon the third issue was rightly ordered. It could no doubt have been found that the Convention by accepting the tenant's money ratified the sale to him and all the steps thereto that would have been appropriate for the carrying out of that sale. But it would not follow that it ratified an act of the treasurer which, if the demandant's contention is sound, could tend only to prevent the carrying out of the sale which it intended to ratify. And we find no evidence that either the Convention or its executive committee intended to adopt blindly whatever had been done by the treasurer, or acted with knowledge of what he really had done. Unless one of these alternatives were proved, its acceptance of the purchase money would not be a ratification of the act of its treasurer in giving the deed to the tenant. *Murray* v. *Nelson Lumber Co.* 143 Mass. 250. *Foote* v. *Cotting*, 195 Mass. 55, 62. There was such evidence in *Monnahan* v. *Judd*, 165 Mass. 93, and *Beacon Trust Co.* v. *Souther*, 183 Mass. 413.

The verdict upon the third issue must stand; but the demandant's exceptions must be sustained as to the first and second issues, and there must be a new trial upon those issues only.

*So ordered.*