MYRON SNYDER *vs.* THE SPERRY AND HUTCHINSON COMPANY & another.

Suffolk.    May 6, 1975. — August 1, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Landlord and Tenant,* Term of lease, Renewal of lease, Recording of lease, Lease for more than seven years. *Notice. Deed,* Acceptance. *Contract,* For sale of real estate, Merger. *Merger. Deceit.*

A lease of premises for a term of five years, giving the lessee an option to extend the lease for a second five year term, was a lease "for more than seven years from the making thereof" and was recordable under G. L. c. 183, § 4, as appearing in St. 1941, c. 85. [437-438]

Where the owner of premises subject to a recorded lease and the lessee made an unrecorded agreement in June, 1965, that on expiration of the recorded lease it would be extended to April 30, 1968, and in 1967 the parties made another unrecorded agreement extending the lease to April 30, 1970, and giving the lessee an option to extend it to April 30, 1972, the utmost term which the lessee could claim under the unrecorded agreements was less than

seven years, and the 1967 lease modification, including the option, was valid without recordation under G. L. c. 183, § 4, as appearing in St. 1941, c. 85; upon exercising the option the lessee was entitled to possession until April 30, 1972, as against one who bought the premises in 1968 with actual notice of the 1965 agreement. [438-440]

A deed of premises subject to "a Lease . . . to . . . [a named lessee] dated March 16, 1961 (together with Amendments)" subjected a buyer of the premises in 1968 to a covenant in the lease running with the land giving the lessee an option to extend the term of the lease until April 30, 1972, and upon exercising the option the lessee was entitled to possession until that date. [439-440]

With respect to a purchase and sale agreement wherein the seller agreed to convey the premises by quitclaim deed, free from encumbrances except "[a] lease to . . . [a named lessee] for a term of years expiring April 30, 1970," and warranted that such lease was "the only lease in existence concerning the premises," and wherein it was explicitly stated that "the acceptance of a deed by the BUYER . . . shall be deemed to be a full performance and discharge of every agreement and obligation," it was held that the buyer, by accepting a deed expressly referring to such lease "together with Amendments" and making the conveyance subject thereto was foreclosed from recovering damages from the seller on the ground that an amendment to the lease giving the lessee an option to extend the lease to April 30, 1972, which was exercised, was a breach of the warranty. [440-443]

Representations by the seller of certain premises originating in negotiations with the buyer and continuing until a conveyance to him in 1968 that the only leasehold encumbrance was a lease expiring on April 30, 1970, although the premises were subject to a valid agreement made in 1967 by the seller and the lessee, of which the buyer was unaware, giving the lessee an option, which he exercised, to extend the lease to April 30, 1972, entitled the buyer to maintain an action for deceit against the seller and to damages from April 30, 1970, to the date the lessee vacated the premises in 1971. [443-446]

BILL IN EQUITY filed in the Superior Court on December 5, 1969.

The suit was heard by *Adams,* J., on a master's report.

The Supreme Judicial Court granted a request for direct appellate review.

*Sydney Berkman (Carl K. King* with him) for the plaintiff.

*Richard H. Steinberg* for The Sperry and Hutchinson Company.

*Herbert D. Lewis* for Brookline Masonic Building Association, Inc.

REARDON, J. This bill of complaint was entered in 1969 by a general partner of the Harvard Medical Building Associates (buyer) seeking declaratory relief as to his right to possession of certain property which he had purchased. This right was alleged against The Sperry and Hutchinson Company (S & H), a tenant then in possession of the property. He also sought damages against the Brookline Masonic Building Association, Inc. (seller), by reason of the continuing occupancy of S & H beyond April 30, 1970. The case was referred to a master who, after hearing evidence, filed a report in which he referred two questions of law to a judge of the Superior Court. The judge made rulings on the reported questions, denied motions to recommit and to modify the master's report, and entered judgments for the defendants.[1] This court granted an application for direct appellate review. The facts as found by the master, to which reference is made in the rulings of the judge, are as follows.

In 1961, S & H leased property at 209 Harvard Street, Brookline, from the Marion Trust, then the owner of the property. The lease ran for a term of five years from May 1, 1961, to April 30, 1966, and S & H was given therein an option to extend the lease for an additional five years until April 30, 1971. A notice of the lease, executed by the parties on June 17, 1961, was recorded.

---

[1] The record does not disclose an express confirmation of the master's report by the judge. However, we treat his denial of motions to recommit the report and a motion to modify the report, followed by the entry of final decrees against the plaintiff, as an implicit confirmation of the report. *Druker* v. *Druker,* 268 Mass. 334, 342 (1929). *Ryan* v. *Stavros,* 348 Mass. 251, 253 (1964). The judge made reference to the master's findings of fact in his rulings on the reported questions of law and, except for certain subsidiary findings relating to damages, the parties do not contest the master's findings on appeal.

In 1964, the seller purchased the premises subject to the lease. In June of 1965 the seller and S & H entered into an agreement to the effect that on the expiration of the original five-year term the lease would be extended for a period of two years expiring on April 30, 1968, and S & H would have an option to extend it further to April 30, 1970. This agreement was not recorded.

In October, 1967, the seller and S & H agreed on still another modification whereby the lease was extended from May 1, 1968, to April 30, 1970, S & H having an option to extend it for an additional two years from May 1, 1970, to April 30, 1972, by giving notice on or before October 31, 1969. The seller had the right by giving S & H written notice by April 30, 1969, to cancel this option. Here again the agreement was not recorded.

On May 11, 1968, Harvard Medical Building Associates, as the buyer, executed an agreement with the seller to purchase the premises subject to the lease to S & H described as "for a term of years expiring April 30, 1970." Title passed on July 10, 1968, and the deed noted that "[t]his conveyance is made subject to and with the benefit of a Lease of said premises to The Sperry and Hutchinson Company, dated March 16, 1961 (together with Amendments), a Notice of which is recorded with said Deeds in Book 3921, Page 404, which Lease and Amendments are hereby assigned to the Grantee." Thereafter all rent payments and amounts due under a tax escalation clause were paid by S & H to the buyer. S & H notified the buyer on May 28, 1969, that in accordance with the 1967 amendments to the lease it was exercising its option to extend the lease for two years from May 1, 1970, to April 30, 1972. This was timely notice under the lease as amended in 1967. On September 25, 1969, counsel for the buyer wrote to S & H alleging that changes in the lease providing for its extension to 1972 had not been recorded, although the buyer had taken the property with knowledge of the extension to April 30, 1970. He requested S & H to vacate by April 30, 1970.

S & H, however, did not vacate until July 31, 1971. Prior to that date, and in the face of the claim by the buyer that the lease and all options to extend expired on April 30, 1970, S & H paid, and the buyer received, monthly rent as stipulated by the lease, and additional amounts due under its tax escalation clause.

1. With respect to the buyer's rights against S & H, the buyer contends that because the 1967 lease modification was not recorded S & H had no right to possession of the premises beyond April 30, 1970. The argument is that the original 1961 lease was required to be recorded under G. L. c. 183, § 4, and that consequently any modification of that lease must also be recorded in order to protect the lessee against a bona fide purchaser without actual notice of the modification. This issue was reported by the master to the judge who rejected the buyer's position. We affirm the judge's ruling on this point.

As we construe the recording act, the 1967 lease modification, including the option to renew, was valid without recordation. The pertinent language of the statute is as follows: "A conveyance of an estate in fee simple, fee tail or for life, or a lease for more than seven years from the making thereof, shall not be valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it, unless it, . . . or, with respect to such a lease, a notice of lease . . . is recorded." G. L. c. 183, § 4, as appearing in St. 1941, c. 85.[2] It is settled law that the seven-year period pertaining to leases includes any options to extend or renew the lease where the lessee has the sole power to determine whether the option is to be exercised. *Toupin v. Peabody,* 162 Mass. 473, 476-477 (1895). *Leominster*

---

[2] Subsequent to the events involved in this case, G. L. c. 183, § 4, was amended by St. 1973, c. 205. The possible effect of that amendment on the legal problems we discuss here is not before us and we express no view as to any such effect on future cases.

*Gas Light Co.* v. *Hillery,* 197 Mass. 267, 268 (1908). *South St. Inn, Inc.* v. *Muehsam,* 323 Mass. 310, 312 (1948). Cf. *Fanger* v. *Leeder,* 327 Mass. 501, 506-507 (1951). Were the law otherwise, the salutary purpose of the recording act could be defeated, for "[i]n fixing upon seven years from the making of the lease as the length of a term which might be valid as against a *bona fide* purchaser without actual notice, the Legislature intended that to be the utmost which a lessee for years under an unrecorded instrument could claim as against such a purchaser, whether the instrument demised directly a longer term, or provided for its indirect creation by an agreement for renewal at the lessee's option." *Toupin* v. *Peabody, supra,* at 477. Thus, although the original 1961 lease was for a term of only five years, it was recordable because it gave the lessee an option to renew for a second five-year term.

The agreements entered into by S & H and the seller in 1965 and 1967 were not, however, of this character. The period from the making of the instrument in 1965 to the expiration of the maximum term under the renewal option was something less than five years. When the lease was renegotiated in 1967, the maximum term, including the option to renew, was likewise less than five years.[3] Clearly the utmost which the lessee could claim under these agreements was less than the statutory seven-year period. On these facts we are of opinion that recordation was not required. By its terms the statute sets the date of the making of the lease agreement as the critical date, and we do not construe the statute as requiring a different result when the agreement is in fact an amendment to, or a renegotiation of, an earlier lease.

---

[3] Furthermore, for at least a portion of the term the lessor had the right to cancel this option. See *Fanger* v. *Leeder,* 327 Mass. 501, 506-507 (1951). The significance of this right in the lessor need not be pursued, however, in view of the fact that the lease was for less than seven years even if the entire period covered by the renewal option is included in the computation.

See Schwartz, Lease Drafting in Massachusetts, § 5.12 (1961). Certainly if the subsequent lease was entered into with a different tenant the existence of an earlier lease would be irrelevant, and we are not persuaded that the existence of a prior lease with the same tenant, even though recorded, is a compelling ground of distinction under the statute as written.[4] In neither case can an unrecorded agreement give the lessee a right to possession for more than seven years. And in both cases the buyer can adequately protect himself against a right to possession for less than seven years by consulting the seller and the present lessee to ascertain the contents of any outstanding unrecorded lease agreement. See *Cunningham* v. *Pattee*, 99 Mass. 248, 252 (1868), as explained in *Toupin* v. *Peabody*, 162 Mass. 473, 478 (1895); Davis, Massachusetts Conveyancers' Handbook (2d ed. 1967) § 22. We are not impressed with the argument that the recording of the 1961 lease entitled the buyer to look no further than what appeared of record, for it is conceded that the buyer had actual notice of the unrecorded 1965 agreement which itself changed the terms of the lease from those contained in the recorded 1961 lease. See Note, 22 U. Cinn. L. Rev. 469, 470 (1953).

There is a second answer to the buyer's claims against S & H, apart from whether the 1967 lease agreement was recordable or not. We do not deal here with anything purporting to be a conveyance of the fee but rather there is involved a conveyance of property expressly made subject to "a Lease of said premises to . . . [S & H] dated March 16, 1961 (together with Amendments)." The court faced a similar situation in *Leominster Gas Light Co.* v. *Hillery*, 197 Mass. 267, 269 (1908), where the

---

[4] We agree with the trial judge that it would be unproductive to give any particular weight to whether an old lease is being "extended" or "renewed" (see *Gibbs Realty & Inv. Corp.* v. *Carvel Stores Realty Corp.* 351 Mass. 684, 685 [1967]), or whether in fact an entirely new lease is executed.

deed of conveyance made the premises subject to "a lease of part of the premises to the Leominster Gas Light Company." The court observed that the purchaser took only the reversion after expiration of the lease, and as the reversioner he was bound by all covenants in the lease running with the land, including a covenant giving the lessee an option to renew for a further five-year term. Consequently, the purchaser was bound by the lease even if it were a lease for more than seven years which had not been recorded. See *Judkins* v. *Charette,* 255 Mass. 76, 81 (1926); *Bickford* v. *Dillon,* 321 Mass. 82, 83 (1947); Park, Conveyancing, § 478 (1968). The facts of the instant case fall within this principle, for the deed to the buyer made it clear that the buyer took title subject to the 1961 lease "with Amendments," including all covenants running with the land contained in those amendments, specifically the option to extend the term until April 30, 1972.

It is thus evident that S & H was in legal possession of the premises at all times and, hence, is not liable to the buyer for failing to vacate by April 30, 1970, in accordance with the buyer's demand. This is the conclusion reached by the judge, but rather than dismissing the complaint against S & H he should have entered a declaration to this effect. "Even if a plaintiff is not entitled to the particular relief sought, he is entitled to a binding declaration of rights under an agreement." *Bettencourt* v. *Bettencourt,* 362 Mass. 1, 10 (1972), and cases cited.

2. On the assumption that S & H had a right to remain in possession beyond April 30, 1970, the buyer also looks to the seller for damages occasioned by the delay in satisfying the buyer's right of possession. Two possible theories for recovery may be pieced out of the buyer's all too sketchy argument before the court. The first is that apart from any actionable misrepresentations by the seller there has been a breach of an express warranty in the purchase and sale agreement that the lease with S & H

expired April 30, 1970. The second theory is based on a tort action for deceit in the representations surrounding the conveyance.

In the purchase and sale agreement, the seller agreed to convey the premises by quitclaim deed, free from encumbrances except those specified, which included in clause 4 (e) "[a] lease to . . . [S & H] for a term of years expiring April 30, 1970." A rider to the agreement stated that the "[s]eller warrants and represents that the only lease in existence concerning the premises is the lease mentioned in clause 4 (e)." In arguing that the existence of the option to extend the term until April 30, 1972, must be deemed a breach of this warranty, the buyer relies on *Downey* v. *Levenson*, 247 Mass. 358 (1924). In that case the purchase and sale agreement provided that the property was subject to a lease "which . . . expires January 1, 1921." In fact, the lease gave the tenant the option to extend the lease for one more year at the same rent. The court held that the option to extend was an additional encumbrance on the property beyond the lease mentioned in the agreement and that its existence amounted to a breach of the agreement. *Id.* at 363-364. To similar effect, see *Fruhauf* v. *Bendheim*, 127 N. Y. 587 (1891).

The difficulty with the buyer's position is that in the *Downey* case title had never passed; the court was faced only with the question whether the buyer had a right to rescind the agreement. By contrast, in the present case the premises were conveyed and the buyer accepted a deed which did not contain the same express warranty with respect to the lease. The deed simply stated the quitclaim covenants (G. L. c. 183, § 17) with the qualification that the property was subject to a lease to S & H dated March 16, 1961, "together with Amendments."

In this circumstance, the buyer is confronted with the doctrine that acceptance of a deed ordinarily merges all prior covenants in the deed, discharging all obligations

contained in the purchase and sale agreement except
those specified in the deed itself. *Pybus* v. *Grasso*, 317
Mass. 716, 717 (1945). *Fanger* v. *Leeder*, 327 Mass.
501, 505 (1951). *McMahon* v. *M & D Builders, Inc.* 360
Mass. 54, 59 (1971). Restatement: Contracts, § 413
(1932). Tiffany, Real Property (3d ed. 1975) § 981.05.
Here the purchase and sale agreement embodied the doc-
trine explicitly: "The acceptance of a deed by the BUYER
. . . shall be deemed to be a full performance and dis-
charge of every agreement and obligation herein con-
tained or expressed, except such as are, by the terms
hereof, to be performed after the delivery of said deed."
The covenant with respect to expiration of the S & H
lease does not come within the exception to the merger
doctrine for promises "which are additional or collateral
to the main promise to convey the land and are not in-
consistent with the deed as given." *Pybus* v. *Grasso,*
*supra,* at 719. This exception is limited to covenants
which would naturally be omitted from the deed so that
their absence in the deed does not manifest an intent by
the parties that they be there merged. Restatement:
Contracts, §§ 413, 240 (1) (b) (1932). Restatement 2d:
Contracts, § 242 (2) (b) and comment d (Tent. Draft
1973). Williston, Contracts (3d ed. 1961) § 645. Anno.
38 A. L. R. 2d 1310, 1320-1323 (1954). Covenants
respecting the existence of encumbrances such as a lease
do not fall within this exception, for they go to the very
essence of what is to be conveyed and will almost cer-
tainly be the subject of provisions in the deed. See G. L.
c. 184, § 21; *Lipson* v. *Southgate Park Corp.* 345 Mass.
621, 625 (1963); *Holihan* v. *Rabenius Builders, Inc.* 355
Mass. 639, 642 (1969); *McMahon* v. *M & D Builders,*
*Inc. supra,* at 60. The fact that the deed expressly refers
to the S & H lease leaves no doubt that the covenant in
the purchase and sale agreement concerning the expira-
tion of the lease must be deemed to have been merged
into the deed covenants. See anno. 38 A. L. R. 2d 1310,
1319-1320 (1954).

Turning to the deed covenants, we must conclude that the buyer cannot recover from the seller on the basis of the warranty against encumbrances. Although a lease is an encumbrance (*Batchelder* v. *Sturgis*, 3 Cush. 201, 203 [1849]), the deed makes the conveyance subject to the lease "with Amendments" so that the warranty is subject to that qualification. G. L. c. 184, § 21. *Brown* v. *South Boston Sav. Bank*, 148 Mass. 300, 304 (1889). *Hixon* v. *Starr*, 242 Mass. 371, 373 (1922). Swaim, Crocker's Notes on Common Forms (7th ed. 1955) § 140. Tiffany, Real Property (3d ed. 1975) § 1008. The specific terms of the lease as amended are not required to be set out in the deed in order to make the deed subject to the lease. *Leominster Gas Light Co.* v. *Hillery*, 197 Mass. 267, 269 (1908). *Hixon* v. *Starr, supra.* See *Lambert* v. *Krum*, 121 Misc. (N. Y.) 170, 180-181 (Sup. Ct. App. Term 1923); Friedman, Contracts and Conveyances of Real Property (3d ed. 1975) § 4.8 (b), pp. 286-287.

3. We next consider the buyer's claim for damages against the seller on the basis of misrepresentations by agents and officers of the seller concerning the term of the lease with S & H. The master found that prior to the execution of the purchase and sale agreement the general partner of the buyer asked an officer of the seller if the property was subject to any leases. He was told that there was a lease with S & H and that one Singer, a real estate broker, would deliver a copy of the lease to the buyer. Singer was given the originals of the 1961 lease and the 1965 amendment to the lease, which he copied, giving the copies to the buyer. According to a stipulation of the parties, copies of the 1961 lease and the 1965 agreement were also delivered to the buyer at the time of the passing of title on July 10, 1968. There was no evidence that the buyer had any knowledge of the 1967 agreement, which contained the option to extend the term until April 30, 1972, prior to receiving a letter from S & H on May 28, 1969, indicating a desire to

extend the lease until 1972, and a second letter on June 4, 1969, which enclosed a copy of the 1967 agreement.

The master's only specific finding relating to the possibility of an actionable misrepresentation by the seller was as follows: "The . . . [buyer] does not contend that there was any intentional misrepresentation, or intent to deceive by the . . . [seller or S & H] and I so find. The statements, written or oral, were honest mistakes of fact and I find that there was no reason for any intentional misrepresentation or deception." The judge apparently concluded as a result that the buyer could not recover damages from the seller, for he dismissed the complaint against the seller on the merits. On this aspect of the case we conclude that the judge was in error.

Contrary to the implication in the master's report, an intentional misrepresentation is not a prerequisite to recovery for deceit. "In this Commonwealth it has been held in a long line of cases that 'the charge of fraudulent intent, in an action for deceit, may be maintained by proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; and in such case it is not necessary to make any further proof of an actual intent to deceive.' *Chatham Furnace Co.* v. *Moffatt,* 147 Mass. 403, 404." *Powell* v. *Rasmussen,* 355 Mass. 117, 118 (1969). See *Yorke* v. *Taylor,* 332 Mass. 368, 371 (1955) (rescission); *Maxwell* v. *Ratcliffe,* 356 Mass. 560, 562 (1969) (damages); *McMahon* v. *M & D Builders, Inc.* 360 Mass. 54, 59 (1971) (rescission).

Here numerous representations were made by the seller that the only leasehold encumbrance on the property was a lease to S & H expiring on April 30, 1970. This was a false representation of fact,[5] not opinion, and was clearly

---

[5] There is no doubt that the existence of the lessee's option to extend the lease for an additional two years makes the representation that

susceptible of the seller's knowledge, for the seller had been a party to the 1967 agreement. Such a representation, intended to induce action, may be actionable when the buyer relies on it to his detriment. See *Lyman v. Romboli,* 293 Mass. 373, 374 (1936); anno. 33 A. L. R. 853, 1014-1027 (1924); Williston, Contracts (3d ed. 1970) § 1493. The representations began during the negotiations, when the buyer was told of a lease with S & H and was given only the 1961 and 1965 agreements. The purchase and sale agreement expressly confirmed the representations concerning the S & H lease, and further provided that the "Seller shall deliver to the Buyer herewith, a true copy of said lease." There was nothing in the deed to put the buyer on notice of the falsity of these representations, for the reference in the deed to the lease with Amendments could fairly be interpreted by the buyer to refer to the amendments to the original lease contained in the 1965 agreement. Further, it was stipulated by the parties that at the time title passed the seller delivered to the buyer copies of the 1961 and 1965 agreements, which would tend to define for the buyer the term "Amendments" in the deed as referring to those modifications contained in the 1965 agreement. The representations were thus continuing ones, originating in the negotiations and remaining in effect at the time the transaction was consummated. In this respect the case is distinguishable from *Fanger* v. *Leeder,* 327 Mass. 501, 505 (1951), in which the court considered only whether a representation concerning a lease contained in a purchase and sale agreement could

the lease expired in 1970 a false one. See *Downey* v. *Levenson,* 247 Mass. 358, 363 (1924). The fact that under the 1967 agreement the lessor could terminate the option by giving S & H notice by April 30, 1969, does not alter this conclusion in the present circumstance where the buyer never learned of its right to terminate until after this right had expired. Moreover, the seller's representations were not just that the lease expired in 1970 but also that there were no lease agreements in existence other than those which had been delivered to the buyer, which was patently false.

support a deceit action. Relief was denied on the ground that the representation was merely a promise in futuro. But here it is evident that the representation must be viewed as one which was repeated and continued right up to the time of the conveyance.

The seller contends that the buyer had a duty to investigate more fully the scope of the lease amendments. It is true that notice of the existence of a lease ordinarily gives the buyer notice of the content of the lease. *Cunningham* v. *Pattee*, 99 Mass. 248, 252 (1868). *Hixon* v. *Starr*, 242 Mass. 371, 373 (1922). But if the seller's representations are such as to induce the buyer not to undertake an independent examination of the pertinent facts, lulling him into placing confidence in the seller's assurances, his failure to ascertain the truth through investigation does not preclude recovery. *Grimes* v. *Kimball*, 3 Allen 518 (1862). *Rollins* v. *Quimby*, 200 Mass. 162, 166 (1908). *Yorke* v. *Taylor*, 332 Mass. 368, 372-374 (1955). Restatement: Torts, § 540 (1938). This is so even though the seller's representations are not consciously false. *Yorke* v. *Taylor, supra*, at 374.

Therefore, on the basis of the facts reported by the master, we conclude that the seller is liable to the buyer for deceit. We do not, however, address ourselves to the proper computation of damages in this case. The trial judge, concluding that there was no liability, did not address himself to the significance of the subsidiary facts found by the master relating to damages. The parties disagree as to the inclusion of certain subsidiary findings in the report but they did not argue the question of the correct measure of damages under a deceit theory of recovery. Consequently we think it appropriate to remand this case to the trial court for further proceedings relative to an assessment of damages.

4. To summarize our rulings: (1) With respect to the defendant S & H, a declaration is to be made to the effect that S & H had a right to possession of the premises until April 30, 1972, pursuant to the option contained in

the 1967 lease agreement; (2) With respect to the defendant Brookline Masonic Building Association, a declaration is to be made stating that the defendant is liable to the plaintiff in deceit for damages suffered by reason of the occupancy of the premises by S & H from April 30, 1970, to July 31, 1971, when S & H vacated the premises. The case is remanded to the trial court for an assessment of damages.

*So ordered.*