In re Rocky R. CIFALIA, Debtor.

The KEY BANK OF
FLORIDA, Plaintiff,

v.

Rocky R. CIFALIA, Defendant.

Bankruptcy No. 90–4682–8P7.
Adv. No. 90–430.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

. Jan. 23, 1991.

Nancy G. Farage, Tampa, Fla., for plaintiff.

Paul E. Riffel, Tampa, Fla., for defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case and the matter under consideration is the dischargeability, vel non, of a debt admittedly due and owing by Rocky R. Cifalia (Debtor) to The Key Bank of Florida (Bank), the Plaintiff who instituted this adversary proceeding.

The Complaint filed by the Bank sets forth two separate claims of non-discharge-

ability. The claim in Count I is based on Section 523(a)(2)(A) of the Bankruptcy Code and is based on the contention that the Debtor, in connection with obtaining certain loans or renewing certain loans with the Bank, made false representations concerning the value and condition of the vehicles and status of the titles of the vehicles which were pledged as security for the loans. The claim in Count II is based on Section 523(a)(6) of the Bankruptcy Code and is based on the allegation that the Debtor, as president of a non-debtor corporation, sold collateral on which the Bank had a valid lien without the consent or authorization of the Bank and did not pay to the Bank the monies owed. Based on the foregoing is it the contention of the Bank that the debts owed by the Debtor to the Bank arising out of the transactions described above should be excepted from the overall protection of the general bankruptcy discharge based on Sections 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code.

At the commencement of the final evidentiary hearing, counsel for the Bank announced that the Bank would not pursue the claim set forth in Count II of the complaint and agreed that same should be dismissed with prejudice. This leaves for consideration the claim set forth in Count I of the Complaint. The facts relevant to this claim as established at the final evidentiary hearing are as follows:

The Debtor, while being employed by several automobile dealerships, embarked on a part-time venture of purchasing and refurbishing luxury automobiles. The Debtor later devoted himself full-time to this business, first as a sole proprietor and later on he formed a corporation known as Mercedes Specialists, Inc. of which he became the president and sole stockholder. The Debtor, while operating as a sole proprietor and as president, had numerous loans with the Bank going back as far as 1977. Some of the loans were unsecured, some were secured by real estate, and some were secured by liens on luxury automobiles. In connection with these last ventures, the Debtor did purchase several automobiles with funds obtained from the Bank as follows:

On July 11, 1989, the Debtor borrowed $32,000 from the Bank in order to purchase a 1985 Mercedes 500 SEC (Plaintiff's Exhibit No. 3); on July 31, 1989, the Debtor borrowed $7,000 from the Bank in order to purchase a 1979 Mercedes 300 SD (Plaintiff's Exhibit No. 4); on August 1, 1989, the Debtor borrowed $27,500 from the Bank in order to purchase a 1987 Mercedes 300E (Plaintiff's Exhibit No. 1); on August 4, 1989, the Debtor borrowed $44,000 from the Bank in order to purchase a 1987 Mercedes 560 SEC (Plaintiff's Exhibit No. 5); and, lastly, on August 14, 1989, the Debtor borrowed the sums of $9,500 and $13,500 from the Bank in order to purchase a 1973 Mercedes 2-door convertible (Plaintiff's Exhibit No. 2) and a 1978 Mercedes 450 SLC (Plaintiff's Exhibit No. 6), respectively. In conjunction with the loan transactions, the Debtor did execute a promissory note in each instance, not only in his capacity as president of the corporation, Mercedes Specialists, Inc., but also individually. Thus, there is no dispute that he is personally liable on all six loans.

Prior to the commencement of the Chapter 7 case, the Bank instituted a suit against the Debtor in the Thirteenth Judicial Circuit in and for Hillsborough County and on January 16, 1990 based on the Debtor's and Mercedes Specialists, Inc.'s default under ten promissory notes, including the six notes described above, and obtained a final judgment against Mercedes Specialists, Inc. and the Debtor. The judgment awarded to the Bank the sum of $180,-447.15 against Mercedes Specialists, Inc. and the Debtor and also awarded the Bank the sum of $6,315.49 against the Debtor individually (Plaintiff's Exhibit No. 7).

The present claim which is involved in this litigation is $134,500 in principal based on the six promissory notes referred to earlier, which amounts were adjusted by certain credits given by the Bank for monies received by the Bank from liquidation of the repossessed collateral.

During the relationship between the Debtor and the Bank, the Debtor had at

least 200 short term loans with the Bank relating to acquisitions of luxury automobiles. The evidence is undisputed that in each instance when the Debtor found he had an opportunity to purchase an automobile, he called the Bank and requested a loan in the amount necessary to purchase the automobile and possibly some parts needed for repairs and stated to the loan officer the average loan value of the automobile to be purchased as appeared to be in the latest NADA publication. Of course, the Bank also had a NADA book and not only had the opportunity but in fact did verify the loan value stated by the Debtor. This record is totally devoid of any evidence that the Debtor at any time made an affirmative statement concerning the condition of the vehicles or the status of the title of the vehicles. It was understood by the Bank that the loan was based on the average loan value of the specific vehicle as stated in the NADA book. At no time did the Bank request or did in fact inspect any of the vehicles and it is without dispute that the vast majority of the loans were repaid by the Debtor and repaid on time. It is clear that the Bank relied on the loan value as appeared in the NADA book and not on anything that the Debtor said. Out of the six automobiles involved, the Bank did recover all of them and three cars covered by the notes were sold by the Bank for $26,500. The loan value of these cars, according to the NADA book was $30,000. The remaining three automobiles were classified by the Bank as "junk", that is, they were taken apart and had no motor or transmission and were sold ultimately for $2,500. It appears that the Bank was aware that the Debtor was involved not only in buying and selling luxury automobiles, typically Mercedes Benz automobiles, but also restoring automobiles which were in accidents. It appears that in October of 1989, the Debtor was forced to close the business, was locked out of the premises and there is no evidence what happened to the automobiles which were left on the premises until they were repossessed by the Bank.

■ These are basically the operative facts presented by the Plaintiff which, according to the Plaintiff, support the conclusion that the indebtedness of this Debtor to the Bank should be excepted from the overall protection of the general bankruptcy discharge by virtue of Section 523(a)(2)(A) of the Bankruptcy Code. It should be noted at the outset that the burden to establish a claim of non-dischargeability is clearly on the Plaintiff. Until very recently, the Plaintiff was required in this Circuit to prove a claim of non-dischargeability based on fraud by clear and convincing evidence. *See In re Hunter*, 780 F.2d 1577 (11th Cir.1986). However, the Supreme Court in *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), recently held that the applicable standard of proof is a mere preponderance of the evidence. Under either standard, this Court is satisfied that the Plaintiff failed to meet its burden of proof for the following reasons:

■ As held in the case of *In re Hunter, supra*, 780 F.2d at 1579, decided by this Circuit, in order to prevail under this section of the Bankruptcy Code, it is clear that it must be established that the Debtor made false representations with the purpose and intent to deceive the creditor, the creditor relied on such representations and as a result the creditor sustained a loss. It is well established that the Debtor must be guilty of a positive fraud involving moral turpitude and not implied fraud. *In re Hunter, supra*, 780 F.2d at 1580; *In re Pedrazzini*, 644 F.2d 756 (9th Cir.1981). In the absence of explicit representations concerning a material fact which is false, no viable claim of non-dischargeability can be recognized under Section 523(a)(2)(A). As noted earlier, in this instance, there is not a scintilla of evidence in this record that the Debtor made any express representations to the Bank which were false. It is a generally established proposition that absent a duty imposed by law to disclose facts because of a peculiar relationship of the parties or a showing that a debtor has willfully concealed or omitted material facts requested by a creditor, a mere silence and failure to disclose material facts, in this case the condition of the automobiles, falls far short of the requirement of

the law to establish false representations. *In re Hunter, supra,* 780 F.2d at 1580; *Davison–Paxon Co. v. Caldwell,* 115 F.2d 189 (5th Cir.1941), *cert. denied* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941).

Based on the foregoing, this Court is satisfied that the Plaintiff failed to establish with the requisite degree of proof the essential operating elements of the claim of non-dischargeability under Section 523(a)(2)(A).

A separate final judgment shall be entered in accordance with the foregoing.