In re Vincent J. SESTITO, Debtor.

Rose EPPARD, Plaintiff,

v.

Vincent J. SESTITO, Defendant.

Bankruptcy No. 90–14860–JNG.
Adv. No. 90–1388.

United States Bankruptcy Court,
D. Massachusetts.

Jan. 30, 1992.

Andrew M. Fischer, Jason & Fischer, Boston, Mass., for plaintiff.

Richard Hackel, Monheimer and Hackel, Boston, Mass., for defendant.

## MEMORANDUM

JAMES A. GOODMAN, Chief Judge.

### I. INTRODUCTION

On October 12, 1990, Rose Eppard ("Eppard") filed an adversary complaint against Vincent J. Sestito ("Sestito" or the "Debtor"), seeking a determination from this Court that a debt owed to her by Sestito is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6) of the Bankruptcy Code.[1] The complaint and Eppard's Motion for Summary Judgment are predicated upon a judgment Eppard received against Sestito from the Essex Superior Court, after a trial on the merits of a complaint Eppard filed against Sestito and another individual, Lars Sevland, for breach of contract, fraudulent misrepresentations, and unfair and deceptive practices.

### II. FACTS

Eppard filed a complaint in Essex Superior Court against Sevland and Sestito on April 24, 1986. After sending a demand letter pursuant to M.G.L. ch. 93A, she amended her complaint to include a count for unfair and deceptive trade practices. The Superior Court conducted a trial and made detailed findings of fact. In summary, the Superior Court determined that Eppard entered into an eight-page contract with Tradewinds Construction ("Tradewinds") in which that entity agreed to make substantial renovations to a house Eppard owned on High Street in Newburyport, Massachusetts. The contract was signed by Sevland and Sestito. Both had visited Eppard's property prior to signing the contract and had assured Eppard that the renovation and restoration work would take six weeks. The contract called for a total payment of $19,231; one quarter of that sum was payable upon the commencement of the work, one half was payable when the stairs were installed and other defined work completed, and the balance was due upon completion of the entire project.

Work commenced in early January 1986, and Eppard paid Tradewinds $4,808. Shortly after receiving the first payment, Sevland advised Eppard that he needed more money to purchase supplies and materials, specifically a circular staircase. On or around January 11, 1986, Eppard gave Sevland a check for $9,616. That check, like Eppard's first check, was payable to Tradewinds Construction. After Eppard's second payment, work on the house stopped. Eppard eventually terminated the contract for failure to perform.

According to the Superior Court, Sevland and Sestito shared a phone number and an answering machine. The Tradewinds account was held by both Sevland and Sestito, and they both executed signature cards. Eppard's second check in the amount of $9,616 was deposited in the bank account of Alize Investment Corporation at the Newburyport Five Cents Savings Bank. Seven thousand dollars remained in the account after an immediate $2,616 cash withdrawal. Of the $7,000 remaining, $4,200 was withdrawn in cash by Sevland and $2,761.02 by Sestito. Eppard's second check was never used by either Sevland or Sestito to purchase materials or supplies for Eppard's home, except for some plywood. The Superior Court specifically found that:

[a]lthough there was no written partnership agreement between Sevland and Sestito, ... they were partners who con-

---

1. Although Eppard's complaint refers to 11 U.S.C. § 727 of the Bankruptcy Code, it does not state any causes of action under section 727. Additionally, Eppard does not mention 11 U.S.C. § 523(a)(6) in her motion for summary judg- ment, although the complaint does allege Sestito's debt to Eppard should not be discharged because it was incurred as a result of malicious conduct.

ducted business as Tradewinds Construction. *Sestito represented himself to be a partner and held himself out to be an officer of Tradewinds Construction.* Sestito collected bills, designed the brochures and advertisements and took photographs for Tradewinds Construction. Both Sestito and Sevland signed signature card [sic] on file with The Newburyport Five Cent Savings Bank for the Tradewinds Construction account.

\*      \*      \*      \*      \*      \*

[T]his Court concludes that the $9,616.00 advance was fraudulently obtained from plaintiff Eppard by deliberate misrepresentations by defendant Sevland for which both defendants are legally responsible.

*Eppard v. Sevland,* No. 86–1111, slip op. at 2 and 5 (Superior Court August 26, 1987) (emphasis supplied).

The Superior Court also made findings as to the damages suffered by Eppard. Additionally, in its rulings of law, the Superior Court noted: "[t]hree factors place the defendant's [sic] statements in the misrepresentation category: (1) the statements were, according to Eppard's testimony, responsive to a specific inquiry about the need for the advance; (2) the statements stated need for $9,616.00 to continue and finish this portion of the contract were false for the defendant virtually stopped work after the payment; and (3) ... the money did not go to purchase materials and/or supplies as defendant said it would." *Id.* at 8–9.

On appeal, and upon consideration of a petition for rehearing, the Appeals Court affirmed in part and reversed in part the decision of the lower court. Specifically, the Appeals Court found "ample, if not overwhelming, evidentiary support and legal authority for most of the judge's detailed findings of fact and conclusions of law." *Eppard v. Sevland,* No. 89–P–338, slip op. at 1 (Appeals Court July 2, 1990), 28 Mass.App.Ct. 1124, 556 N.E.2d 1066 (table). However, the Appeals Court determined that the damages were erroneously calculated.

## III. DISCUSSION

■ The issue before this Court is whether Eppard's state court judgment should be given preclusive effect in Sestito's bankruptcy proceeding. Courts will deny relitigation of a particular issue if the following four conditions are met: "1) the issue sought to be precluded must be the same as that involved in the prior action; 2) that issue must have been actually litigated; 3) it must have been determined by a valid and final judgment; and 4) the determination must have been essential to the judgment." *In re Picard,* 133 B.R. 1 (Bankr.D.Me.1991), *quoting In re Ross,* 602 F.2d 604, 608 (3d Cir.1979). *See also, In re Dubian,* 77 B.R. 332, 337 (Bankr.D.Mass. 1987).

■ The Court must compare the state and bankruptcy law requirements to sustain a claim for misrepresentation in order to determine whether the four conditions set forth above have been established. The burden of proof, however, is the same in both the state and bankruptcy courts, namely preponderance of the evidence. *See Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Under Massachusetts law, "[t]o sustain a claim of misrepresentation, a plaintiff must show a false statement of material fact made to induce the plaintiff to act, together with reliance on the false statement by the plaintiff to the plaintiff's detriment." *Zimmerman v. Kent,* 31 Mass.App.Ct. 72, 77, 575 N.E.2d 70 (1991). *See e.g., Danca v. Taunton Savings Bank,* 385 Mass. 1, 8, 429 N.E.2d 1129 (1982); *Powell v. Rasmussen,* 355 Mass. 117, 118–19, 243 N.E.2d 167 (1969); *Acushnet Federal Credit Union v. Roderick,* 26 Mass.App.Ct. 604, 605 and n. 1, 530 N.E.2d 1243 (1988). Under state law, "[w]here the plaintiff proves 'a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge ... it is not necessary to make any further proof of actual intent to deceive.'" *Kent, supra,* at 77, 575 N.E.2d 70, *quoting Snyder v. Sperry & Hutchin-*

*son Co.,* 368 Mass. 433, 444, 333 N.E.2d 421 (1975).

■ Section 523(a)(2)(A) of the Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C. § 523(a)(2)(A). In order to establish the nondischargeability of a debt under 523(a)(2)(A) of the Bankruptcy Code, a plaintiff must prove the following five elements: 1) a false statement made by the debtor; 2) such representation was known to be false at the time it was made; 3) such representation was made with the intention and purpose of deceiving the creditor; 4) such representation was reasonably relied on by the creditor; and 5) the creditor sustained loss or damage as a proximal result of such false representation. *In re Rubin,* 875 F.2d 755 (9th Cir.1989); *In re Hunter,* 780 F.2d 1577 (11th Cir.1986); *In re Kimzey,* 761 F.2d 421, 423 (7th Cir.1985); *In re Cifalia,* 124 B.R. 124 (Bankr.M.D.Fla. 1991); *In re Leger,* 34 B.R. 873, 876–77 (Bankr.D.Mass.1983).

■ In comparing the elements that must be shown to sustain a claim for misrepresentation under Massachusetts law with the elements that must be established by a preponderance of the evidence to sustain a cause of action under section 523(a)(2)(A), the Court finds they are interchangeable. Thus, if Sevland were the debtor, the inquiry as to whether the state court judgment precludes relitigation of the claim for misrepresentation would be resolved in favor of Eppard. The state court specifically and unequivocally determined that Sevland *fraudulently* obtained $9,616 from Eppard by *deliberate* representations known to be false when he made them.

■ The state court determined that Sestito was jointly and severally liable for the damages suffered by Eppard because it found Sevland and Sestito were partners by estoppel. To ultimately resolve the issue of the preclusive effect of the state court judgment, this Court must decide, for purposes of section 523(a)(2)(A), whether Sevland's fraud may be imputed to his partner Sestito.

Sestito understandably argues that there is an absence of proof that he knew that Sevland made false representations and that he reaped the benefit of Sevland's conduct. Indeed, in an affidavit submitted with his opposition to the summary judgment motion, Sestito challenges the findings of the state court, which were affirmed on appeal, by asserting that he had no role or responsibility whatsoever in the management of Tradewinds Construction or Alize Investment Corporations and that he was not employed by either firm. The Court cannot accept the Debtor's assertions since to do so would be tantamount to both a rejection of the state court's finding that Sestito and Sevland were partners and an invitation to relitigate the state court proceeding. This Court accepts for purposes of this decision the determination by the Superior Court that Sevland and Sestito were partners. That finding was explicit and integral to the court's decision. ("The defendants held themselves out as partners, they did so directly and with the consent of the other....")

This Court rules that the Sevland's fraud may be imputed to Sestito. The Court has reviewed the recent case of *BancBoston Mortgage Corporation v. Ledford,* 127 B.R. 175 (M.D.Tenn.1991), and finds the reasoning of the district court persuasive. In that case, the district court, after an extensive and thoughtful analysis of countervailing authorities, found that the law of Tennessee mandated imputation of liability. The court, after citing the provision of the Uniform Partnership Act, dealing with the wrongful acts of partners observed:

The imputation of fraud in this case not only coincides with well-settled law, it is also sound policy. As Ledford's general partner, Sikes had the opportunity and

duty to ensure that the affairs of the partnership were conducted with integrity. He was in the best position to prevent the fraud, and to discover it before it damaged the partnership's creditors. By participating as a general partner, Sikes accepted these obligations.

127 B.R. at 185.

Massachusetts has enacted the Uniform Partnership Act which contains a provision identical to the one cited by the Ledford court. *See* Mass.Gen.Laws Ann. ch. 108A, § 13 (West 1990). Accordingly, the statutory and policy considerations at play in *Ledford* are equally applicable to the instant case.

Thus, the Court finds that all four conditions have been met for the application of collateral estoppel, and the Court will give preclusive effect to Eppard's state court judgment in the amount of $9,616. In view of the foregoing, the memorandum and arguments of counsel, the Court hereby grants Eppard's Motion for Summary Judgment and enters judgment in favor of Eppard in the amount of $9,616.00 and against Sestito.

The foregoing constitutes findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. An appropriate order shall issue.