**In re BARRETT HOME CORP., f/k/a Arthur Rutenburg Corp., Debtor.**

**Bankruptcy No. 91–9037–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 2, 1994.

Harley E. Riedel, Tampa, FL, F. Wallace Pope, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, FL, for debtor.

Sara Kistler, Tampa, FL, Asst. U.S. Trustee.

John D. Goldsmith, Tampa, FL, for Creditor's Committee.

Terrence Russell of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, FL, for claimants Accent Homes, Inc., Woodvale Management Corp., Woodvale at Cypresshead, Inc., Hearthstone at Cypresshead, Inc., Dupree General Contractors, Inc., Foglia Const. Co., Inc., Foglia–Dupree Custom Homes.

## ORDER ON ESTIMATION OF CLAIMS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS A confirmed Chapter 11 case and the matter under consideration is the estimation of the contingent and unliquidated claims filed by Accent Homes, Inc., Woodvale Management Corp., Woodvale at Cypresshead, Inc., Hearthstone at Cypresshead, Inc., Dupree General Contractors, Inc., Foglia Construction Company, Inc., and Foglia–Dupree Custom Homes, by and through its general partners, Dupree General Contractors, Inc. and Foglia Construction Company, Inc. (Claimants) against the Chapter 11 Debtor, Barrett Home Corp., f/k/a Arthur Rutenberg Corp. (Debtor). The claims un-

der consideration are basically a restatement of the claims filed by the Claimants in their suit against the Debtor in the Circuit Court of Broward County, Florida prior to the commencement of this Chapter 11 case. In the three count Complaint filed in that suit the Claimants sought money damages in Count I based on an alleged civil conspiracy between the Debtor and an entity known as Narco Realty, Inc. (Narco); in Count II on an alleged violation of Florida's anti-trust statute, Fla.Stat. § 542.18; and, in Count III on an alleged violation of Fla.Stat. §§ 772.103, and 772.104, the Florida civil Rico Statute, rendering the Debtor liable for treble damages. The facts as established at the final evidentiary hearing can be summarized as follows:

At the time relevant, Narco was the developer of a project known as Cypresshead, a high-end residential development located in Broward County, Florida. In 1983 Cypresshead was in financial trouble due to the depressed real estate market resulting in lack of sales. In order to boost sales, Narco entered into an agreement (Main Agreement) with the Debtor. Narco hoped to salvage the project through its affiliation with the Debtor, a well known, large scale builder of expensive homes, hoping that the Debtor's participation in the project and its name and expertise would put the development on the right track. Pursuant to the Main Agreement, the Debtor agreed to permit the use of its name in advertising; to construct model homes, and also agreed to purchase up to 170 lots from Narco. In return, Narco agreed to spend certain minimum amounts to advertise the development, and to make lots available to the Debtor at prices below Narco's standard builder's price offered to other builders.

It appears that after the Debtor started its participation in the development pursuant to the Main Agreement, Narco called a meeting of numerous smaller builders, including the Claimants, to discuss a program for the sale of building lots to the builders in Cypresshead. At that meeting a representative of Narco represented to the Claimants that the Debtor was involved in the project and that it was paying the standard builders price for lots in Cypresshead. It is alleged that a representative of the Debtor attended at least one meeting and remained silent and did not correct the statement when the statement concerning the lot prices was made by the representative of Narco. Notwithstanding, it is without dispute that pursuant to an addendum to the Main Agreement, Narco agreed to discount the sales price of the lots purchased by the Debtor and the Debtor did, in fact, receive a discount on the lot sales and did not pay the standard builders price paid for lots by other builders. It is further without dispute that the documentary stamps on the deeds involving the lot sales by Narco to the Debtor indicated a higher purchase price than was actually paid by the Debtor. It is equally true, however, that this was not the idea of the Debtor and was done at the insistence of Narco to do so for reasons not clear from this record. Be that as it may, this Court is satisfied that this was not part of any grand scheme of conspiracy and certainly not done to defraud these claimants. Out of the 170 deeds which were recorded by the Debtor, only one deed was said to have been actually examined by the Claimants prior to the commencement of this litigation.

Concerning the basis of the claims asserted by the Claimants seriatim, this Court is satisfied that this record does not support a civil conspiracy between Narco and the Debtor but is really nothing but a sound advantageous business relationship to both Narco and the Debtor and not entered into with the aim to harm anyone but merely to assist a successful development of the project. The fact, if it is a fact, that at the meeting described earlier a representative of the Debtor failed to speak up and contradict the representative of Narco concerning the alleged statement that the Debtor pays the standard contractors price for the lots is of no consequence. This is so because even if it is true, the silence or failure to speak up did not amount to an actionable fraud because there was no duty to speak on the part of the representative of the Debtor and absent a duty imposed by law, mere silence and failure to disclose material facts falls short of establishing false representations. *In re Cifalia*, 124 B.R. 124, 126 (Bankr.M.D.Fla. 1991). In the instant case, there was no fiduciary relationship between the Claimants

and the Debtor which would give rise to an affirmative duty to speak.

 The Claimants have also asserted that the actions of the Debtor in recording documentary stamps which reflect a price higher than that which was actually paid is evidence of a civil conspiracy between the Debtor and Narco which fraudulently induced the Claimants into further investment at Cypresshead. This contention is likewise without merit. To prevail on such a claim, the Claimants must demonstrate an affirmative misstatement on the part of the Debtor upon which the Claimants relied to their material detriment. Assuming arguendo that the recording of the documentary stamps was an affirmative misstatement, the Claimants have failed to show any reliance on the documentary stamps which did not truly reflect the price paid by the Debtor. The evidence demonstrated that only one of the one hundred-seventy deeds recorded was in fact examined.

 Next, the allegation that the Main Agreement between Narco and the Debtor resulted in restraint of trade in violation of the anti-trust statute of this State, Fla.Stat. § 542.18 is equally without merit.

*Fla.Stat. § 542.18. Restraint of trade or commerce.*

Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful.

As noted in the case of *St. Petersburg Yacht Charters v. Morgan Yacht,* 457 So.2d 1028 (Fla.App. 2 Dist.1984), "horizontal restraints" are those imposed within the distribution level, e.g., by some dealers refusing to sell to other dealers. Vertical restraints, even assuming such exists, are not considered to be per se anti-trust violations.

In the present instance, Narco did not refuse to sell lots to the Claimants and the fact that the Debtor had some competitive advantage by obtaining lots for a price less than the claimants were required to pay, is insufficient to establish a violation of the Statute.

 The test for whether or not the conduct of the Debtor offends Fla.Stat. § 542.18, Florida's Antitrust statute, is governed by the "rule of reason." This test is applied to conduct or transactions which are otherwise lawful, even though they might appear to have an anticompetitive effect. *St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.,* 457 So.2d 1028 (Fla. 2d DCA 1984). Under the rule of reason test, alleged antitrust violations require proof relating to the anticompetitive effects of the conduct alleged, but the Court is required to "weigh all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Continental T.V. Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1978).

When one applies the rule of reason test to the facts of the case at hand, any anticompetitive effects of the price differential in the lot sales are far outweighed by the legitimate economic business reasons which Narco had in offering to sell the lots to the Debtor at a price lower than the price the Claimants were required to pay. It is undisputed that the ability of the Debtor to purchase lots at a price lower than that paid by the Claimants gave the Debtor a competitive advantage in the Cypresshead development. However, there were certain undertakings and obligation assumed by the Debtor which were not assumed by the Claimants. For instance, the Debtor, pursuant to its Main Agreement with Narco, was required to purchase one hundred and seventy lots and was required to build, furnish and to staff model homes. No similar obligations were required of the Claimants. In fact, the Debtor's requirement to build model homes may have produced a procompetitive effect rather than anticompetitive because model homes would enhance the attractive nature of Cypresshead and thus would benefit all the builders including the Claimants at Cypresshead.

Also, it should be noted that Narco brought the Debtor into the Cypresshead development at a time when the entire project was in extreme financial difficulty and was at the verge of collapse under these extreme conditions. It was reasonable for Narco to seek out a developer with superior prestige and expertise in order to save a

failing development. Based on the foregoing, this Court is satisfied that the Debtor is not liable to the Claimants under Fla.Stat. § 542.18 for any antitrust violations.

■ The Claimants' allegations that the Debtor violated the Florida Civil RICO statutes are likewise without merit. Fla.Stat. § 772.103 states:

Fla.Stat. § 772.103 Prohibited activities.

It is unlawful for any person: who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity . . .

Fla.Stat. § 772.104 Civil cause of action. Provides that

any person who proves by clear and convincing evidence that he has been injured by reason of any violation of the provisions of s. 772.103 shall have a cause of action for threefold the actual damages sustained . . .

■ Fla.Stat. § 772.104 clearly indicates that the burden of proof to establish a viable claim pursuant to § 772.104 requires clear and convincing evidence to show that the person charged with engaging in prohibited activities had a criminal intent and received proceeds from a pattern of criminal activity. There is nothing in this record which warrants that the Debtor acted with criminal intent and, moreover, the record is devoid of any evidence that the Debtor was engaged in a pattern of criminal activity both of which are indispensable elements of a viable claim under § 772.104.

The Debtor's participation in the Cypresshead development was nothing but an economically sound business undertaking, i.e., building upscale homes in the project. Its Agreement with Narco had none of the characteristics of a classic criminal pattern required under this Statute.

In sum, this Court is satisfied that the claimants equally failed to establish a viable claim under § 772.103 and § 772.104.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the estate is not liable to the Plaintiffs and, therefore, it is not necessary to proceed to estimate their claims.

DONE AND ORDERED.