CATHARINF CUNNINGHAM *vs.* GEORGE D. PATTEE & others.

D & P., copartners, were lessees of a parcel of real estate. P. with D.'s assent gave C. an underlease of part of it, (described as a store of a certain number on a certain street,) drawn in the names of both D. and P., but signed by P only, for the balance of their term, and containing the following covenant: "The lessors promise to renew said indenture for such further term as their leasehold estate in the premises may be renewed or extended." C. entered into possession, and paid rent to D. & P. till the dissolution of the copartnership, when D. assigned to P. all his interest in the original lease; and thereafter C. paid rent to P. alone. At the end of the term, the owner of the whole estate agreed to give a new lease thereof for a shorter term at an increased rent to P. with a surety; and P., in consideration of the agreement of S. to become his surety, gave S. an underlease of the store for the new term. S. took it knowing that C. was in possession as a tenant, but without actual knowledge of the covenant of renewal above quoted, formal notice of which was, however, served on him by C. before the owner executed the new lease to P. After receiving the new lease, P. refused the demand of C. for a renewal; and reëxecuted his underlease to S. *Held,* that the effect of the assignment by D. to P. of all his interest in the original lease was to confirm the underlease to C. and render it as perfect as if it had been signed originally by D. with P. *Held, also,* that the covenant of renewal therein was not void for indefiniteness; and that, notwithstanding the transactions between P. and S., C. was entitled to a renewal at the same rent and with the same covenants, except the covenant of renewal, for the whole of P.'s new term.

BILL IN EQUITY, filed May 15, 1867, against George D. Pattee, Charles H. Pattee and Charles T. Stevens, to compel specific performance of George D. Pattee's covenant of renewal, contained in an underlease, dated November 1, 1864, and signed by him alone, but purporting in the body thereof to be the lease of him and John C. Dalton, of " the store on Hanover Street in Boston numbered 262 in the numbering of said street," to the plaintiff, for " the remainder of the lessors' leasehold estate in the premises," at an annual rent of $300; said covenant being as follows : " The said lessors do promise to renew said indenture for such further term as their leasehold estate in the premises may be renewed or extended." The case was submitted for the determination of the full court on agreed facts, the material parts of which were as follows :

Amasa D. Gamage, the owner of a parcel of real estate on Hanover Street, of which the premises in question were a part, leased the whole to the copartnership of Holmes & Smith for

six years from May 1, 1861, for an annual rent of $1000; and they on December 1, 1863, assigned the lease, for the unexpired balance of the term, to the copartnership of Dalton & Pattee, which consisted of John C. Dalton and George D. Pattee. On November 1, 1864, Pattee gave to the plaintiff the underlease described in the bill, with the understanding that she should procure thereto the signature of Dalton also, who had agreed with him to sign it, and who fully intended to fulfil his agreement but through oversight or inadvertence failed to do so. In pursuance of this underlease, the plaintiff entered into possession, and paid rent to Dalton & Pattee until July 1865, (when that copartnership was dissolved,) and afterwards to Pattee alone. On July 15, 1865, in settlement of the affairs of their late firm, Dalton assigned to Pattee all his title and interest in and under the assignment of the original lease by Holmes & Smith to Dalton & Pattee.

In April 1867, the month before the end of the term of the original lease, Gamage orally agreed to give George D. Pattee a new lease of the whole estate at an increased rent, if Pattee would procure a surety for the performance of his covenants; and Pattee thereupon orally agreed with Charles T. Stevens to underlet to him, under the new lease, the premises then occupied by the plaintiff, if he would become surety. The plaintiff had no knowledge of this agreement between Pattee and Stevens until after the filing of her bill. On May 1, 1867, (Gamage not having at the time executed the new lease,) Pattee gave to Stevens a lease of the premises occupied by the plaintiff, for three years from that date, at the annual rent of $500. On May 13, 1867, Gamage executed the new lease to Pattee of the whole estate, for three years from April 30, 1867, at the annual rent of $1100 and taxes; and Stevens became Pattee's surety thereon. The plaintiff, upon the delivery of this lease to Pattee, demanded of him a renewal of her underlease in pursuance of the covenant therein; but Pattee refused her demand. On the next day, (Stevens and Pattee deeming Pattee's lease of May 1 to Stevens insufficient,) Pattee underlet the whole estate to Charles H. Pattee, and Charles H. Pattee gave to Stevens an

underlease of the premises occupied by the plaintiff, for the same term and at the same rent stipulated in the lease of May 1. It was agreed that these two leases of May 14 might " be regarded in intent and effect as a lease directly from George D Pattee to Stevens."

Stevens, at the time of his oral agreement with George D. Pattee in April 1867, knew that the plaintiff was in occupation as a tenant, but had no actual knowledge of the covenant for renewal in her lease ; and on May 11, 1867, the plaintiff served on Stevens notice of that covenant, and " that no new lease to George D. Pattee of said premises has yet been executed or delivered," and " that any lease which you may have or take is subject to my equitable rights."

*F. W. Hurd,* for the plaintiff.

*S. E. D. Currier,* for the defendants.

FOSTER, J. This is a bill in equity to enforce specific performance of a renewal covenant in a lease, the terms of which are the following : " And the said lessors do promise to renew said indenture for such further term as their leasehold estate in the premises may be renewed or extended."

1. The first objection to the plaintiff's bill arises from the fact that the sublease to her was signed by only one member of the firm who were the assignees of the original lease from the owner of the estate. In the body of the instrument John C. Dalton and George D. Pattee are named as lessors ; but it was executed by Pattee alone. Dalton & Pattee held jointly a lease of a larger parcel than that demised to the plaintiff; and shortly after the execution of the lease to her, Dalton assigned to Pattee all his interest in the original lease. The plaintiff entered upon the demised premises, under the lease executed by Pattee, and has ever since continued in occupation, paying the rent reserved, and performing the covenants of said lease. It did not purport to be a demise of the several interest of Pattee as one of two joint tenants or tenants in common, but was a lease of certain premises described as definitely as if they had been set out by metes and bounds, namely, store No. 262 Hanover Street.

A lease or deed, by one tenant in common to a stranger, of a

portion of the joint estate, although voidable by the cotenants who do not join therein, is valid between the parties and against all persons unless so avoided. If the title of the cotenant entitled to disaffirm the conveyance becomes vested in the one by whom it was executed, the newly acquired title of the lessor or grantor will inure by estoppel to the benefit of the lessee or grantee. *Keay* v. *Goodwin*, 16 Mass. 1. *Rising* v. *Stannard*, 17 Mass. 282. *Johnson* v. *Stevens*, 7 Cush. 431. *De Witt* v. *Harvey*, 4 Gray, 491. The words "lease, demise and let" amount to an implied covenant for quiet enjoyment at least against the lessor himself. *Dexter* v. *Manley*, 4 Cush. 14. And under the description of the premises in the lease, this covenant plainly applies to the whole store let, and is not limited to the undivided interest of Pattee therein. From these familiar principles it follows that, as soon as the title of Dalton was assigned to Pattee, it operated as a confirmation of the previous lease by Pattee to the plaintiff, whose rights as tenant were thenceforth as perfect as if her lease had been originally executed by both Dalton and Pattee.

2. It is unimportant to consider whether there is anything in the present case to vary the ordinary rule that a covenant to renew a lease is a covenant running with the land; because relief is sought by this bill against the very party who executed the covenant. It is the defendant George D. Pattee's own contract, of which specific performance is demanded.

3. The next topic of inquiry relates to the connection of the defendant Charles T. Stevens with the premises and with the present suit. The new lease to Pattee from the landlord who owned the estate was executed May 13, 1867, and was guaranteed by Stevens. Previously, on May 1, 1867, and pursuant to a verbal agreement in consideration of the proposed guaranty, Pattee leased to Stevens the part of the estate embraced in the lease to the plaintiff. On May 14, George D. Pattee leased all the premises demised by Gamage to him to Charles H. Pattee, and on the same date Charles H. gave Stevens a lease of the plaintiff's portion. The fact is agreed that this must be treated as if made directly from the defendant George D. Pattee to the

defendant Stevens. When Stevens took his first lease, his les-
sor had no estate which he could demise; and he had received
full and formal notice of the rights of the plaintiff in equity, be-
fore the renewal lease was executed by the upper landlord, and
therefore before George D. Pattee acquired any title which could
inure to the benefit of Stevens by way of estoppel.

The authorities fully support the doctrine in equity that one
who purchases an estate, knowing it to be in the possession of
a tenant, is bound to inquire into the nature of the tenant's in-
terest, and will be affected with notice of the extent thereof.
According to this principle, the known possession of the plain-
tiff as tenant was sufficient notice to Stevens of the fact that
she had a written lease, and of its contents, including the cove-
nant to renew. The general rule is, that notice sufficient to
make inquiry a duty is notice of all that by reasonable inquiry
would have been ascertained. Adams Eq. 151. 1 Story Eq.
§ 400. *Taylor* v. *Stibbert*, 2 Ves. Jr. 440. *Daniels* v. *Davison*,
16 Ves. 249.

These considerations require us to regard the defendant Ste-
vens as standing on no better footing than the other defendant,
George D. Pattee, by whom the renewal covenant was made.
We find nothing to distinguish the present case from the ordi
nary one of a covenant to renew a lease sought to be enforced
between the original parties thereto. The principles by which
such a case is governed are established by numerous authorities.

4. The covenant to renew is not void for indefiniteness. The
word, *ex vi termini,* imports the giving a new lease like the old
one, with the same terms and stipulations; at the same rent and
with all the essential covenants. *Rutgers* v. *Hunter*, 6 Johns.
Ch. 215. *Willis* v. *Astor*, 4 Edw. Ch. 594. *Carr* v. *Ellison*, 20
Wend. 178. *Piggot* v. *Mason*, 1 Paige, 412. *Tracy* v. *Albany
Exchange Co.* 3 Selden, 472. *Whitlock* v. *Duffield*, Hoffm. Ch.
110. *Kelso* v. *Kelly*, 1 Daly, 423. *Price* v. *Assheton*, 1 Y. &
Col. Exch. 82. *Rickards* v. *Rickards*, 2 Y. & Col. Ch. 427, 428.
To this rule there is one exception, equally well established with
the rule itself. The renewal covenant is not to be inserted in the
new lease; that agreement is satisfied and exhausted by a sin

gle renewal. An agreement to renew *toties quoties* will not be inferred, in the absence of words clearly pointing to that intention. *Hyde* v. *Skinner*, 2 P. W. 196. *Davis* v. *Taylors' Co.* 3 Ridgew. P. C. 395. *Tritton* v. *Foote*, 2 Bro. Ch. 636; *S C.* 2 Cox Ch. 174. *Russell* v. *Darwin*, 2 Bro. Ch. 638, note. *Reece* v. *Dacre*, 1 Hargr. Jurid. Arg. 438. *Brown* v. *Tighe*, 8 Bligh, (N. S.) 272, 290. *Moore* v. *Foley*, 6 Ves. 232. *Iggulden* v. *May*, 9 Ves. 325; *S. C.* 7 East, 237.

5. But the fact that the covenantor has himself taken a new lease at an increased rent, or upon more onerous conditions than the first, will not relieve him from obligation to fulfil his own contract; nor will it justify charging an increased rent, or imposing greater burdens on the sublessee than those contained in the first lease to him. *Evans* v. *Walshe*, 2 Sch. & Lef. 519. *Thomas* v. *Burne*, 1 Drury & Walsh, 657. *Hackett* v. *McNamara*, Lloyd & Goold, temp. Plunk. 288. *Revell* v. *Hussey*, 2 Ball & Beat. 280. The only way by which the obligation of such a covenant can be escaped is by the covenantor's abandonment of the estate, without a direct or indirect renewal of his own tenancy.

*Decree for the plaintiff for a renewal of her lease to expire with the present lease from Gamage, and upon the same terms and with the same covenants as the plaintiff's first lease, omitting the covenant to renew.*