FRED M. LAMSON *vs.* HERBERT COULSON & another.

Essex. November 12, 1919. — January 5, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Land Court,* Jurisdiction, Petition for establishment of right or interest adverse to registered title. *Landlord and Tenant,* Assignment of lease, Covenant of renewal. *Mortgage,* Of real estate. *Estoppel.*

The Land Court under R. L. c. 128, § 105, has jurisdiction of a petition for the determining of the validity of a claim that the title to certain land, which has been registered, is subject to a right in the petitioner to a renewal of a lease, which was in existence at the time of the registration of the title to the land, in accordance with a covenant in that lease.

The executor of the will of the lessee in a lease for fifty years of certain real estate, the widow and son of the lessee joining in the instrument in assent thereto, made an assignment of the lease "and all the estate and interest of said" lessee "in and to the premises thereby demised" with the exception of a portion of the premises which previously had been subleased to another, the assignee agreeing to receive the rent reserved in the sublease and to pay the rent reserved in the original lease to the original lessors. This assignee executed and delivered an instrument of assignment describing the same interest and containing an agreement as to the second assignee receiving the rent from the sublessee and paying to the original lessors the rent reserved in the original lease, and the second assignee on the same day executed a mortgage to the sublessee. The description in the mortgage was of "leased land . . . being the same which" the first assignee "has assigned the lease off, to me, in an assignment, bearing even date and recorded herewith," and, by bounds, of all of the land covered by the original lease except that described in the sublease. *Held*, that the mortgage did not operate as an assignment of the entire lease.

The original lease above described contained the clause, "To Hold for the term of Fifty Years with right of renewal from the First day of May Eighteen hundred sixty-eight." *Held*, that the import of these words was that the renewal lease should be of the same premises contained in the original lease.

While the right to a renewal of a lease of land runs with the land and will pass to an assignee of the entire lease of all the land described in the lease, it does not pass by an assignment which is not of the entire lease.

The mere fact that, under the circumstances above described, the lessor in the original lease and his successor in title had received the entire rent reserved in the original lease from persons who were successors in title to the sublessee after, by reason of conveyances following the death of the sublessee and a foreclosure of the mortgage, the same person had come into possession of the rights of the sublessee under the sublease and of the rights described in the mortgage, did not estop the successors in title of the original lessor from denying that such holder of both the rights conveyed by the sublease and of those conveyed by the mortgage had a right to a renewal of the original lease.

PETITION, filed in the Land Court on May 14, 1918, under R. L. c. 128, § 105, for a speedy hearing as to the validity of a claim registered on May 3, 1918, adverse to a registered title.

The adverse claim which the petitioner sought to have declared valid was to a renewal of a lease for fifty years of certain land at Salisbury Beach given by the Commoners of Salisbury to one Enoch Stevens and described in the opinion. To comply with the requirement of the statute that he state, in his affidavit setting forth his alleged right or interest, "how or under whom it was acquired," the petitioner relied upon the following instruments · described in the opinion: The deed of assignment in 1869 from the executors of the will of Enoch Stevens to Nelson Kimball of rights under the Enoch Stevens lease, the assignment by Kimball

to Jonathan F. Morrill dated May 18, 1872, and the mortgage by Morrill to George Hills on the same day. He further relied upon a title to the sublease which had been given to Hills before the assignment to Kimball, as stated in the opinion, and which, after Hills's death, by a conveyance to Mrs. Hills and under her will and the will of her daughter, came to the petitioner, and upon a title gained by foreclosure, after the death of Hills, of the mortgage from Morrill to Hills. The determination of the validity of the petitioner's title rested primarily upon the construction and legal effect of that mortgage. The entire description of the premises mortgaged was as follows: "a certain piece or parcel of land situated in said Salisbury, containing one acre and one hundred and twenty-three rods, more or less, with a portion of the building standing thereon and known as the Atlantic House, at Salisbury Beach, and other buildings standing thereon, and is bounded and described as follows, viz. Easterly by land heretofore leased by the Commoners to Enoch Stevens, deceased, and by the Executors and heirs of said Stevens, assigned to Nelson Kimball, in part, and in part to said Hills, and by said Kimball, to myself, in an assignment of said lease, bearing even date herewith; Southerly by a road; Westerly by land conveyed to me by Nelson Kimball in a deed bearing even date herewith and as hereinafter described; and Northerly by land of Eliphalet Brown; or however otherwise the same may be bounded; also one other piece of land (Salt Marsh) situated in said Salisbury, and adjoining the above described premises, and containing four acres and forty rods, more or less, and bounded as follows, viz. Beginning at the Canal, near the bridge at the causeway; thence Northerly on said canal to the long ditch; thence running Easterly on said long ditch to a stake at the first above described premises, at marsh near the old path; thence Southerly by the first above described premises, and the old path to the road; thence Westerly by the road to the place began at; the premises being the same which is conveyed to me by Nelson Kimball, in a deed bearing even date and recorded herewith. And also one other piece of land, the same being leased land, situated in said Salisbury, and adjoining on the East, the first above described premises, and being the same which said Nelson Kimball, has assigned the lease off, to me, in an assign-

ment, bearing even date and recorded herewith, together with the larger portion of the Hotel building, known as the Atlantic House, at Salisbury Beach, and other buildings standing thereon, and is bounded Northerly by leased land of said Hills; Easterly by the seashore; Southerly by the road leading to said seashore; and Westerly by the first above described premises."

In the Land Court the petition was heard by *Davis*, J. Material facts found by him are described in the opinion. The judge of the Land Court ruled in substance that the petitioner had failed to maintain his claim of a valid adverse right or interest in the registered land. The petitioner alleged exceptions.

R. L. c. 128, § 105, is as follows: "Whoever claims any right or interest in registered land adverse to the registered owner which arises subsequent to the date of original registration may, if no other provision is made in this chapter for registering the same, make a statement in writing setting forth fully his alleged right or interest, and how or under whom it was acquired, and a reference to the volume and page of the certificate of title of the registered owner, and a description of the land in which the right or interest is claimed. The statement shall be signed and sworn to, and shall state the adverse claimant's residence, and designate a place at which all notices may be served upon him. This statement shall be entitled to registration as an adverse claim, and the court, upon the petition of any party in interest, shall grant a speedy hearing upon the question of the validity of such adverse claim, and shall enter such decree thereon as justice and equity may require. If the claim is adjudged to be invalid, the registration shall be cancelled. If the court, after notice and a hearing, finds that a claim thus registered was frivolous or vexatious, it may tax the adverse claimant double costs."

*R. E. Buffum*, (*H. I. Bartlett* with him,) for the petitioner.

*G. Edmunds*, (*W. Coulson* with him,) for the respondents.

RUGG, C. J. This is a petition brought under R. L. c. 128, § 105, for the registration of an adverse claim against registered land. The claim is that the registered land is subject to a right of renewal of a lease for a term of years, and that request for renewal has been made according to the terms of the lease and that renewal has not been furnished.

The petitioner is seeking the establishment, and not the en-

forcement, of his claim to a right of renewal of the lease. The real question at issue is whether the right to renewal exists. If it does exist and demand for renewal has been made and refused, that constitutes an incumbrance on the title of the respondents. A claim of this character can be adjudicated under the jurisdiction conferred by the statute. *Cunningham* v. *Bright,* 228 Mass. 385. It does not fall within the inhibition of the principle illustrated by *Sederquist* v. *Brown,* 225 Mass. 217.

One of the respondents concededly is the owner of the fee of one part, and the other respondent of the remaining part, of the land, to a renewal of a lease of which the petitioner lays claim.

The lease of which the petitioner claims the right of renewal was made by the Commoners of Salisbury to Enoch Stevens by indenture under date of May 1, 1867, and was duly recorded. The annual rent reserved was $25. The lease contained this clause: "To Hold for the term of Fifty Years with right of renewal from the First day of May eighteen hundred sixty-eight." It has not been argued that this lease was not valid and binding upon the lessor and hence upon the respondents as successors in title. It was found by the Land Court to be valid. The facts reported support that conclusion. The presumption is in favor of regularity under the circumstances. *Bishop* v. *Burke,* 207 Mass. 133; *S. C.* 216 Mass. 231. *Stauffer* v. *Koch,* 225 Mass. 525.

The lease contained no provision against subletting or assigning.

The leased premises have since become divided into two main parts, the northerly part known under different designations as the Rice lot, as the Ocean View House lot, and as lot numbered 437, and the southerly part known as the Atlantic House lot, as lot numbered 438; and also, after a part had been taken for highway purposes, as lot numbered 438A.

Enoch Stevens, the original lessee, died and in 1868 his widow and son executed a lease to George Hills of the northerly part of the leased premises, being lot No. 437, describing it as bounding southerly "by remaining land leased to said Enoch Stevens by said Commoners" for the term of fifty years from the first day of May, 1868. This contained no provision as to renewal and was strictly a sublease. A year later the executors of the will of Enoch Stevens, the widow and son joining in assent, executed

to Nelson Kimball an assignment of "the lease from the Commoners of said Salisbury to said Stevens, dated the first of May" 1867 "and all the estate and interest of said Stevens, in and to the premises thereby demised, with the exception thereof, of so much of the described premises in the lease aforesaid, as was leased to George Hills" by the widow and son of Stevens, Kimball to receive the rent reserved therein and to pay the rental to the Commoners. In May, 1872, Kimball assigned to one Morrill the original lease from the Commoners to Stevens except so much as had been subleased to Hills, Morrill to receive the rent from Hills and to pay the rent to the Commoners. On the same day Morrill mortgaged to the same Hills two other parcels of land, "And also one other piece of land, the same being leased land, situated in said Salisbury, and adjoining on the East, the first above described premises, and being the same which said Nelson Kimball, has assigned the lease off, to me, in an assignment, bearing even date and recorded herewith, together with the larger portion of the Hotel building, known as the Atlantic House, at Salisbury Beach, and other buildings standing thereon, and is bounded Northerly by leased land of said Hills; Easterly by the seashore; Southerly by the road leading to said seashore; and Westerly by the first above described premises." The description of the last tract, contained in the words just quoted, is a description, so far as expressed by metes and bounds, of lot No. 438 alone. It does not describe nor include within its description lot No. 437. So far as concerns description of land, lot No. 437 is excluded because the lot expressly covered by the description "is bounded Northerly by leased land of said Hills," that is, by the lot No. 437 subleased to Hills in 1868 by the widow and son of Enoch Stevens. On closer analysis of this description it appears clearly to be limited to the southerly lot. The description of the third parcel begins with the words "And also one other piece of land, the same being leased land." Thus far land and land alone is described. There is no reference to the lease except to define the nature of the grantor's title and to show that the land is held under lease and not in fee. Then follow the words, "being the same which said Nelson Kimball, has assigned the lease off, to me." The word "same" can refer only to the land. It cannot, with due regard to the meaning of words or to grammatical construction, be held

to refer to the lease or to all the land covered by the lease. The concluding part of the sentence, beginning with the words "and is bounded," followed by the description by metes and bounds, can have for its subject only the words "one other piece of land" and the various synonyms by which that "piece of land" then to be described is designated. The only land described is the single lot No. 438. Lot No. 437 is by express terms excluded from that description because used as a boundary.

The description of the first tract included within the Morrill mortgage (which confessedly does not include any of the property covered by original lease to Enoch Stevens) confirms the construction that Morrill realized fully that the real property included within the Stevens lease as one parcel had been later subdivided into two parts, because the easterly boundary of that first tract is given in these words: "Easterly by land heretofore leased by the Commoners to Enoch Stevens, deceased, and by the Executors and heirs of said Stevens, assigned to Nelson Kimball, in part, and in part to said Hills, and by said Kimball to myself, in an assignment of said lease bearing even date herewith." These words import recognition of two lots held by different persons as lessees.

The Morrill mortgage was of the same date as the assignment of lease by Kimball to Morrill. The operative words of that instrument are that "I, Nelson Kimball . . . hereby grant, and assign to said Morrill the lease from the Commoners of Salisbury . . . to Enoch Stevens," dated May 1, 1867, "and all the estate and interest that I the said Kimball have in and to the premises thereby demised," with the exception of that part theretofore leased to George Hills. This was a plain assignment of the entire lease. With this instrument before him and fresh in his mind because he had acquired it that very day, Morrill gave the mortgage to Hills with the significantly different words of description heretofore quoted. He nowhere uses words of assignment or conveyance of the lease which he had just purchased. He does the very different thing of describing in the mortgage only one of the two parcels which together made up the land demised by the lease to Stevens. The language used in the mortgage gains emphasis under these circumstances by contrast with the words used in the assignment of the lease to Morrill.

The mortgage transferred to Hills all the interest and rights which Morrill had in the land therein described, whether as lessee or otherwise. That mortgage operated as an assignment of the lease to so much of the land thereby demised as was described in the mortgage. But it was not a mortgage of the whole lease. The lease itself is not mortgaged nor assigned, but only land. The whole of the land demised by the lease is not described in the mortgage. As has been pointed out, the other lot covered by the lease is excluded from the description of the land mortgaged. Hence the lease as a whole was not assigned. As matter of construction of the words used it is impossible to reach the conclusion that the Morrill mortgage to Hills operated as an assignment of the entire lease. It would be idle to speculate as to what may have been the purpose of the parties, their understanding of their respective rights or their view as to the legal effect of this or other instruments in the chain of title. Their intent can be gathered only from the words which they have used to express it, construing those words in their natural sense and in the light of the circumstances under which they were chosen. By this test the contention of the petitioner cannot be sustained.

The chain of title under which the petitioner claims his right of renewal depends for one of its essential links upon the nature and extent of the title conveyed by the Morrill mortgage. It follows that the petitioner fails to show an assignment of the right of renewal of the lease of that part of the demised premises now known as lot No. 437. The petitioner's claim of title to the lease in its entirety breaks at this point.

The covenant of renewal in a lease runs with the land. *Leominster Gas Light Co.* v. *Hillery,* 197 Mass. 267, 269. The covenant for renewal of a lease for an extended term, however, cannot be split into parts by the conduct of the lessee or those claiming under him. The covenant of renewal by the landlord by force of its very words imports a new lease like the old one in every essential particular, saving only a renewal covenant. This means of necessity that the renewal lease must demise the same premises as the old lease. It would be manifestly contrary to the plain intent of a covenant of renewal to compel a landlord to renew, not one lease of the demised premises but several leases of parts thereof with consequent confusion as to rent and other covenants.

While this point does not appear to have arisen before in this Commonwealth, it is within the sweep of the principle declared in *Cunningham* v. *Pattee*, 99 Mass. 248, 252. It was expressly so decided in *Barge* v. *Schiek*, 57 Minn. 155, 160. It is supported in effect by numerous cases. See, in this connection, *Rice* v. *Boston & Worcester Railroad*, 12 Allen, 141; *Finch* v. *Underwood*, 2 Ch. D. 310; *Howell* v. *Behler*, 41 W. Va. 610; *Buchanan* v. *Whitman*, 76 Hun, 67, affirmed 151 N. Y. 253; *Marino* v. *Williams*, 30 Nev. 360, 370.

The respondents are not estopped to deny the petitioner's right to renewal. They have accepted from him and his predecessors in title the entire rent due under the original lease to Stevens. But they were obliged to do that in any event under the conditions here disclosed. It is not disputed that the petitioner and his predecessors were at least sublessees of lot No. 437 by reason of the sublease from the widow and son of Stevens to George Hills. They were in occupation under that sublease and bound to pay rent. They were also assignees of the lease to the rest of the demised premises and of course bound to pay rent accordingly. There is nothing to indicate that in the method of receipt of rent the respondents recognized expressly or inferentially the right of renewal of the lease. There is no room for any presumption as to the terms of occupancy by the tenant, whether as assignee of a lease or otherwise, when the precise facts are shown as they are in the case at bar.

It follows from what has been said that the petitioner fails to show a right to renewal of the lease to Enoch Stevens. This disposes of the petitioner's case adversely to his contentions. The exceptions to the rulings and refusals to rule, so far as not decided, have become immaterial. No reversible error is shown.

*Exceptions overruled.*