JOAN V. QURESHI *vs.* FISKE CAPITAL MANAGEMENT, INC., &
others[1] (and a companion case[2]).

Nos. 01-P-1721 & 02-P-1163.

Middlesex. June 6, 2003. - September 30, 2003.

Present: BECK, KASS, & DOERFER, JJ.

*Landlord and Tenant,* Tenancy at sufferance, Renewal of lease, Extension of
lease. *Summary Process. Practice, Civil,* Summary process. *Judgment,*
Preclusive effect.

The judge in a civil action for breach of a lease correctly determined that the
plaintiff tenant was a tenant at sufferance and granted summary judgment
in favor of the defendant landlord where, in response to the landlord's of-
fer to the tenant of a renewal of her lease to the premises in question, the
tenant's lawyer sent a letter containing terms different from what the
landlord had offered and from what had been the terms of the lease in the
past, which amounted to a counteroffer that the landlord was not required
to accept, and did not accept; moreover, the judge acted within his discre-
tion in entering final judgment pursuant to a motion made under Mass.R.
Civ.P. 54(b), 365 Mass. 821 (1974). [464-469]

The judge in a summary process action properly regarded a Superior Court
judgment in a separate action as having preclusive effect and correctly
entered judgment of possession in favor of the landlord, where there had
been a final judgment on the question whether the tenant occupied the
premises as a tenant at sufferance, the tenant had been a party to the
Superior Court adjudication, the adjudication of the tenant's status was the
same issue raised anew in the summary process proceeding, and the issue
had been essential to the earlier judgment. [469]

CIVIL ACTION commenced in the Superior Court Department on
August 11, 2000.

The case was heard by *Hiller B. Zobel,* J., on a motion for
partial summary judgment and a motion for summary judgment
on all remaining claims and on a counterclaim, and entry of
final judgment was entered by him.

---

[1]Elaine W. Fiske and George F. Fiske, Jr.

[2]Fiske Capital Management, Inc. *vs.* Joan V. Qureshi.

SUMMARY PROCESS. Writ in the Natick Division of the District Court Department dated August 27, 2001.

The case was heard by *Michael J. Brooks*, J., on a motion for summary judgment.

*A. Joseph Ross* for Joan V. Qureshi.

*David J. Burgess* for Fiske Capital Management, Inc., & others.

KASS, J. Joan V. Qureshi launched this litigation with a preemptive strike against Fiske Capital Management, Inc. (Fiske), in Superior Court on August 11, 2000, some eleven months after Fiske, her landlord, had broken off negotiations on a new lease for the premises Qureshi had occupied since 1986 at 20 North Main Street, Sherborn. The premises contained 937 square feet, and Qureshi conducted her practice of dentistry there. Her complaint alleged various breaches of the lease and, particularly, the covenant of quiet enjoyment. Fiske counterclaimed for a declaration that Qureshi's status was that of a tenant at sufferance and that she was liable to it for use and occupation.

In the wake of a decision by a Superior Court judge that Qureshi occupied the premises as a tenant at sufferance, a judge of the District Court entered a judgment of possession for Fiske in a summary process action (G. L. c. 239) brought by Fiske. Qureshi took an appeal from the summary process judgment to the Appellate Division of the District Court. The Appellate Division decided that the District Court judge had properly regarded the Superior Court judgment about the status of Qureshi as a tenant at sufferance as having preclusive effect. The Appellate Division, accordingly, affirmed the judgment of possession in favor of Fiske. Qureshi has further appealed from both the Appellate Division's decision and the judgment of the Superior Court that she is a tenant at sufferance. We affirm.

Qureshi first occupied the dental office premises by assignment of a written lease. The five-year term of that lease ended September 31, 1989, but contained an option to extend the lease, provided that the tenant was not in material default. Rent was to be adjusted on the basis of market, and there was machinery to decide market rent through third-party appraisal should the parties not agree. What the rent should be is a subject

on which the parties have, in fact, always been able to agree. Qureshi timely exercised the option to extend the lease and, indeed, the then owners of the property (Fiske had not yet acquired it) acknowledged exercise of the extension option in an instrument captioned "Amendment to Lease." That document confirmed the dates of the extension term (starting August 1, 1989, and ending July 31, 1994) and set forth the rent during the extension term (there was an increase each year). The lease amendment also provided for a further extension option of five years, running from August 1, 1994, to July 31, 1999.

By letter dated July 15, 1994, Qureshi gave notice of the exercise of the further extension option. Fiske, which now owned the property where Qureshi was a tenant, acknowledged the extension by letter dated July 18, 1994, in which Fiske spelled out the adjusted rental schedule for each of the five years (again there was an increase every year) from August, 1994, through July, 1999. The Fiske letter spoke in terms of "lease renewal" and granted Qureshi "the option to renew for the following five years under the existing lease terms."

An option to renew is not the same as an option to extend. An option to extend entitles the optionee to extend the lease on the terms and conditions of the original lease subject, frequently, to a provision for adjusted rents. Exercise of the option to extend automatically continues the old lease without the necessity of executing a new lease. An option to renew contemplates the execution of a new lease, a process which may introduce new terms and conditions on which the parties must agree or there will be no new lease. See *HLM Realty Corp.* v. *Morreale*, 394 Mass. 714, 715-716 (1985); *Ingram* v. *Sonitrol Security Sys. of Worcester, Inc.*, 11 Mass. App. Ct. 754, 756-757 (1981); *Anderson* v. *Lissandri*, 19 Mass. App. Ct. 191, 194-195 (1985). See also Schwartz, Lease Drafting in Massachusetts, §§ 5.4.1 — 5.4.5 (Bloom & Glazer rev. ed. 2001). An option to extend is much stronger medicine so far as the tenant is concerned.

The difference between "extend" and "renew" is a legal nicety of which nonlawyers are likely to be unaware. *HLM Realty Corp.* v. *Morreale, supra* at 716. Such was apparently the case with George F. Fiske, Jr., who wrote on behalf of

Fiske, because he speaks of an option to renew but adds "under the existing lease terms," language which describes an option to extend. Indeed, the parties treated the August 1, 1994, through July 31, 1999, term as an extension of the old lease. They did not make a new one. In determining whether parties intended to extend under the terms of the existing lease or to negotiate a new one, courts look more to all the circumstances of the lease and the conduct of the parties than to the choice of the word "extend" or "renew." *Ibid.*

What had been a cordial and uneventful landlord-tenant relation turned chilly in August, 1997, when the well that supplied water to 20 North Main Street ran dry. Under the lease, landlord was to supply water. For seven to nine days, of which five were business days, there was no water to the premises. After Fiske had the well dug deeper, water supply resumed. There were questions, however, about the quality of the water. The governing lease warranted that "the well water now serving the premises is tested and approved by the appropriate authorities" and obtaining those tests took additional time. Qureshi found it necessary to install a bottled water system in January, 1998, at a cost of $2,248. In March of that year she began withholding rent until she recovered that amount.

Qureshi's occupancy continued. There were conversations between the parties and at least one letter from Qureshi's lawyer to Fiske. On January 27, 1999, Qureshi wrote to Fiske "to notify you again of my intent to exercise the renewal of my lease to Suite 160." Although she used "renewal" rather than "extension," we do not place much weight on her choice of words because she is not a lawyer. There is, however, a sentence in her letter purporting to exercise her option in which she asks to "discuss this matter," suggesting that there are things about her tenancy that she wishes to negotiate going forward. Fiske, on its part, had not given up on recovering the withheld rent.

Fiske, around July 13, 1999, sent to Qureshi a new lease, captioned "Standard Form Commercial Lease" on a printed form published by the Greater Boston Real Estate Board. Among the nonstandard provisions added in handwriting were a new rent schedule for the next five-year term; a further five-

year extension option; some undertakings by landlord as to new floor covering and wall repair; an undertaking by landlord not to rent space in the building to anyone else for the practice of general dentistry; and a requirement that tenant pay to landlord the withheld $2,248. Obviously, the parties had talked.

Qureshi sent the new lease to her lawyer, who responded on September 8, 1999, with a letter to Fiske with seventeen proposed alterations, some of which were mechanical (e.g., that the description of the leased premises should state that they consist of 937 square feet) and some of which were material. In the latter category were a right by tenant to assign or sublet, permission so to do not to be unreasonably withheld by landlord; a provision that when tenant vacated the premises, tenant would not be responsible for "the removal of any plumbing, electrical, conduit/lines"; a requirement that landlord was to have the water "tested no less than once per year for purity"; a warranty from landlord that the water serving the premises at the time of the new lease had "been tested and approved by the appropriate authorities"; a set aside of parking places for tenant's "clients"; a right of first refusal to lease suite 150 should it become available; a clause tying future rent increases to the consumer price index; and a limitation that any rent increase was not to exceed four percent per year.[3]

By any measure, this was a counteroffer. It introduced commercial terms that had not been part of either the proffered lease or the lease under which the parties had previously operated. See *Champlin* v. *Jackson*, 317 Mass. 461, 463 (1945); *Tull* v. *Mister Donut Dev. Corp.*, 7 Mass. App. Ct. 626, 631 (1979). Fiske was not bound to accept the new terms and did not. On September 20, 1999, Fiske sent Qureshi a letter "rescinding . . . our most recent lease agreement," adding that it had "referred the matter of your tenancy" to counsel.

Apparently there were some further discussions between lawyers but, as previously noted, Qureshi, on August 11, 2000, brought an action against Fiske. On January 8, 2001, Fiske gave

---

[3]Remarkably, in view of the deposition time and ink later expended on the subject, the lawyer's response impliedly acquiesced in the requirement to pay the withheld rent. Indeed, the amount of the withheld rent is a fraction of what the parties have spent fighting about it.

Qureshi a statutory notice to quit pursuant to G. L. c. 186, § 12. The notice required Qureshi to vacate the premises on February 28, 2001. Section 12 provides that an estate at will may be terminated by either party by thirty-days notice in writing, if that period was the interval between the days of payment of rent — as was the case here.

Qureshi claims tenant status under the original 1984 lease, as extended. That lease, however, as we have seen, expired on July 31, 1999. Qureshi, assisted by counsel, had made commercial demands for the next extension period that, to the extent any ambiguities may have attended the meaning of Qureshi's earlier letter of "renewal" (and we do not so decide) unmistakably converted the state of negotiations to horse trading about a new lease. When those ended, the negotiations were in an imperfect state. Neither party was bound. See *Rosenfield* v. *United States Trust Co.*, 290 Mass. 210, 216-217 (1935). Compare *Situation Mgmt. Sys., Inc.* v. *Malouf, Inc.*, 430 Mass. 875, 878-879 (2000). When a tenant has the benefit of an option to extend, the tenant initiates negotiation of new business points at peril that the negotiations will not end in agreement.

On Fiske's motion for summary judgment on all counts of Qureshi's complaint and on its counterclaim, the motion judge correctly determined that after March 1, 2001, Qureshi was a tenant at sufferance and that she thereafter owed monthly occupancy charges of $1,706 (the amount she had in fact been paying through February 1, 2001). The judge's partial judgment included a ruling that Qureshi was liable to Fiske for the $2,248 of withheld rent but that that obligation was susceptible to nullification should Qureshi succeed in her claim for damages flowing from the interruption in water supply. The judge did not allow summary judgment as to the breach of contract count of the complaint, and that claim remains for adjudication.

The Superior Court judge allowed Fiske's motion under Mass. R.Civ.P. 54(b), 365 Mass. 821 (1974), that there was no just reason for delay in the entry of a final judgment that Qureshi, effective March 1, 2001, was a tenant at sufferance in Fiske's premises and had occupied the premises as such since that date

(count I of Fiske's counterclaim).[4] In that respect, the judge acted within his discretion, although it would have assisted review had the judge made specific findings setting forth the reasons for his order. *Long* v. *Wickett*, 50 Mass. App. Ct. 380, 402 (2000). Who was responsible for what in connection with the water disruption, a question of money damages, was a collateral issue to the core question whether Qureshi had any right after February 28, 2001, to occupy the premises. The discrete question of damages was subsidiary to occupancy. Final determination of the occupancy issue was better decided on an expedited basis. The underlying purpose embodied in G. L. c. 239 is that there be machinery for expedited adjudication of occupancy questions. See Rule 1 of Uniform Summary Process Rules (1980); *Hodge* v. *Klug*, 33 Mass. App. Ct. 746, 755 (1992). Compare *J.B.L. Constr. Co.* v. *Lincoln Homes Corp.*, 9 Mass. App. Ct. 250, 252 (1980), in which the partial final judgment entered after allowance of a rule 54(b) motion had no expediting or simplifying effect.

The judge of the District Court properly regarded as preclusive the Superior Court judgment that Qureshi occupied as a tenant at sufferance. There had been a final judgment on that question; Qureshi had been a party to the prior adjudication; the adjudication of Qureshi's status was the same issue raised anew in the summary process proceeding; and the issue had been essential to the earlier judgment. The elements for judgment preclusion were present. See *Heacock* v. *Heacock*, 402 Mass. 21, 23-25 & n.2 (1988); *Commissioner of the Dept. of Employment & Training* v. *Dugan*, 428 Mass. 138, 142 (1998); *Sarvis* v. *Boston Safe Deposit & Trust Co.*, 47 Mass. App. Ct. 86, 98-99 (1999).[5]

In their briefs, the parties raise the question, although with

---

[4]The judge did not include the remaining portions of the partial judgment in the rule 54(b) certification, and they are, therefore, not before us.

[5]We are not detained by Qureshi's argument that it was required that the Superior Court action and the summary process action be consolidated in the Superior Court. While a judge has discretion to allow a motion to consolidate, none was offered by Qureshi, and, in any event, allowance of such a motion is a matter of discretion. See *Fafard* v. *Lincoln Pharmacy of Milford, Inc.*, 439 Mass. 512, 517 (2003); *Kobayashi* v. *Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 504 (1997). In the instant case, the critical issue of tenant status had

little development, whether in the light of *Wesson* v. *Leone Enterprises, Inc.*, 437 Mass. 708 (2002), Qureshi was entitled to withhold rent because of the breach of her landlord's obligation to provide water. As the case has turned on the status of Qureshi's tenancy, we need not decide that question. Whether Qureshi is liable to Fiske for the $2,248 in rent she withheld will turn on the resolution of the residual contract claim, should the parties choose to litigate it.

The Superior Court judgment entered pursuant to Mass.R. Civ.P. 54(b) on count I of Fiske's counterclaim, to the effect that Qureshi has been a tenant at sufferance after March 1, 2001, is affirmed. The decision and order of the Appellate Division affirming the judgment of possession for Fiske is affirmed.

*So ordered.*

---

already been decided and it was sensible to proceed with summary process in the court most familiar with that procedure.