Nickerson, Gary A., J.
INTRODUCTION
The plaintiffs brought these consolidated actions against the defendants, Otter Trap, LLC (“Otter Trap”), Robert A. Cummings Sr. as Trustee of the Salt Air Realty Trust, and Old Wharf Realty, LLC (“Old Wharf’), seeking declaratoiy relief whereby the court would declare the lease under which they claim tenancy enforceable in perpetuity. The matter is before the court on Old Wharfs motion for partial summary judgment and the plaintiffs’ cross motion for summary judgment.
BACKGROUND
This dispute concerns the interpretation of the parties’ rights under a lease agreement to seven acres of land at 248 Old Wharf Road (“property”) in Dennisport, Massachusetts. The property is located near the ocean and is divided into fifty-nine separate lots whereupon subtenants have built their cottages. Old Wharf currently owns the property and the purported tenant is Curtis Pine Grove, Inc. (“Curtis Pine”) which, in turn, subleases the fifty-nine lots to its co-plaintiffs, the subtenants.
The origin of the contested lease dates back to May 14, 1946, when an Arthur F. Chase, then-owner, leased the property to Fred and Mary Curtis (collectively “original parties”).[3] The 1946 lease gave the lessee a five-year tenancy with “an option of renewing [it] at the expiration of succeeding five year periods upon the same terms and conditions as herein contained . . .” (emphasis added). The annual rent was $400.
On January 4, 1951, as the 1946 lease was approaching its end, the original parties executed a nearly identical lease.[4] The rent remained at $400 and the lessees continued to enjoy their “option of renewing.” The term of the new lease, however, was now twenty-five years. The original parties executed one final lease on February 27, 1954. This agreement was identical to the 1951 lease except for a minor change accounting for a third-party encumbrance. Thus the following language from the 1954 lease is at the heart of this case:
[T]he Lessees or their successors shall have an option of renewing this lease at the expiration of succeeding twenty-five (25) year periods upon the same terms and conditions as herein contained .. .
On September 14, 1978, as the 1954 lease was expiring, Carol Cummings, then-owner of the property,[5] received a letter from Curtis Pine’s attorney purporting to exercise its option to renew. The record does not show whether Carol Cummings ever responded. However, Curtis Pine continued in possession for the next twenty-five years.
On January 7, 2004, Curtis Pine again attempted to exercise “its option to renew the [l]ease for an additional term of twenty-five years running to February 27, 2029.” By so doing, Curtis Pine believed that the “terms and conditions of [the] [l]ease [would] remain in full force and effect.” On March 5, 2004, the owners rejected the extension and later returned Curtis Pine’s rent check. This litigation ensued.
Curtis Pine’s complaint asks the court to recognize its alleged right to renew the 1954 lease indefinitely. In their counterclaim, the defendants seek the exact opposite; they would have the court declare that the 1954 lease has only one option to renew, ending in 2004. Their counterclaim also seeks possession and damages for trespass and use and occupation. Old Wharf has moved for partial summary judgment on the declaratory relief count, whereas the plaintiffs have moved for summary judgment on all counts. The original parties to the 1946, 1951 and 1954 leases have died. The parties to this action all agree there is no evidence beyond the documents at hand and the fifty-nine cottages on the ground to guide this court’s resolution of the controversy.[6]
DISCUSSION
A. Standard of Review
The court shall allow a motion for summary judgment where the record shows that no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Highlands Ins. Co. v. AeroVox, Inc., 424 Mass. 226, 232 (1997); Mass.RCiv.P. 56(c) (2008). The moving party bears the burden of showing both the absence of a material fact and that it is entitled to a favorable ruling as a matter of law, Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 711-12 (1991); Mass.R.Civ.P. 56(c). Here, the facts are undisputed, thus making this action ripe for summary judgment.
B. Parties’ Arguments
Old Wharf argues that the lease expired on February 27, 2004, when the renewed twenty-five-year term expired. Old Wharf asserts that the original parties intended that the lessee enjoy only one option to renew the lease for one additional twenty-five-year term. Finally, Old Wharf contends that the renewal provision violates the rule against perpetuities.
Conversely, the plaintiffs claim that the lease, when considered in its entirety, gives the lessee unlimited options to extend. They deny that a perpetual lease is void for remoteness. Finally, the plaintiffs assert that, at the least, the option permits two twenty-five year renewals.
C.To Renew or to Extend
Massachusetts courts have historically distinguished options to renew from those to extend. Straus v. Shaheen, Inc., 310 Mass. 646, 648 (1942); Qureshi v. Fiske Capital Mgmt., Inc., 59 Mass.App.Ct. 463, 465 (2003). To continue a lease through an option to renew, the parties must execute a new lease, extend the old lease through some formal act, or undertake any other equivalent act. O’Brien v. Hurley, 325 Mass. *555 249, 251 (1950); Gardella v. Greenburg, 242 Mass. 405, 407 (1922); Leavitt v. Maykel, 203 Mass. 506, 509 (1909). Conversely, an option to extend empowers its holder to automatically continue the tenancy on the same terms without executing a new agreement. Qureshi, 59 Mass.App.Ct. at 465. Thus, the “distinction between an option for a renewal, which contemplates a new lease, and an option for an extension, which contemplates no new lease but a simple prolongation of the original lease for a further term, is firmly established.” Shannon v. Jacobson, 262 Mass. 463, 466 (1928).
In the modem view, “courts look more to all the circumstances of the lease and the conduct of the parties than to the choice of the word ’’extend" or “renew.” Gibbs Realty & Inv. Corp. v. Carvel Stores Realty Corp., 351 Mass. 684, 685 (1967); Qureshi, 59 Mass.App.Ct. at 466. Nevertheless, The parties’ choice of words is still some evidence of their intention. Manaster v. Gopin, 330 Mass. 569, 572-73 (1953). Courts construe options strictly because they benefit the holder exclusively. Lewis v. Chase, 23 Mass.App.Ct. 673, 676 (1987).
The 1954 Lease grants to the Lessees “an option of renewing this lease.” While the choice of the words “renewing” would suggest, under the traditional Massachusetts case law, an intent by all to enter into a new lease, with possibly new terms, upon the expiration of the initial lease period, the balance of the renewal sentence belies such an intent. The continuing sentence expressly provides for a renewal “upon the same terms and conditions as herein contained.” There is no proof that the original parties drafted the lease with the assistance of learned counsel so the choice of the word “renewal” by laymen is not conclusive as to whether the Lease contemplated a renewal or an extension as those terms are understood in the context of the traditional case law. Qureshi, 59 Mass.App.Ct. at 466.
By their conduct in 1978, the parties extended the 1954 Lease. Their correspondence in 1978 was meager. There is no suggestion that new or different terms were requested by either side. A new lease was never executed. The Lessee continued to pay rent of $400 per year and the Lessor both accepted the rent and left the Lessee and the sub-tenants to enjoy the property. They extended the 1954 Lease through February 26, 2004. See Qureshi, 59 Mass.App.Ct. at 466. Please note, the parties to the Lease in 1978 were not the original parties to the Lease, hence their conduct in 1978 and thereafter is not a clear manifestation of the intent of the original parties to the Lease as to their choice of the words “an option of renewing the lease.”
D. From Here to Eternity
In determining the effective duration of the 1954 Lease this court is guided by two fundamental principles. First, our law is reluctant to recognize a lease in perpetuity absent the most direct language to that effect within The lease. See Cunningham v. Pattee, 99 Mass. 248, 253 (1868). Second, the language of the lease must be examined to determine the intent of the parties as to its duration. See Mutual Paper Co. v. Hoague-Sprague Corp., 297 Mass. 294, 299-300 (1937).
“Perpetual leases are not favored in the law, nor are covenants for continual renewals which tend to create a perpetuity. The intent to create a perpetual lease must appear in clear and unequivocal language, so plain as to leave no doubt it was the intention and purpose of the parties so to do. It should not be left to inference.” McLean v. United States, 316 F.Sup. 827, 829 (D.C.VA. 1970). Over 140 years ago the Supreme Judicial Court said: “An agreement to renew toties quoti.es will not be inferred, in the absence of words clearly pointing to that intention.” Cunningham v. Patten, 99 Mass. 248, 253 (1868). “There must be some peculiar and plain language before it will be assumed that the parties intended to create [a perpetual right to renew a lease].” Winslow v. B.&O. R. Co., 188 U.S. 646, 655 (1903).
The 1954 Lease does not contain language creating a lease in perpetuity. Direct, plain words such as “perpetual", “in perpetuity” and “forever” are absent. See Lonergan v. Connecticut Food Store, Inc., 168 Conn. 122, 126-27 (1975) (“automatically” is insufficient when the lease does not include customary words such as “forever,” “for all time,” and “in perpetuity”); Lattimore v. Fisher’s Food Shoppe, Inc., 313 N.C. 467, 472 (1985) (bright-line rule requiring the lease to contain “forever,” “for all time,” and “in perpetuity,” or “terms unmistakably of the same import”); Rutland Amusement Co., Inc. v. Seward, 127 Vt. 324, 327 (1968) (requiring language such as “forever” or “as long as the grass grows or water runs”). The Lease does speak in terms of “succeeding twenty-five (25) year periods” but one must not read too much into the words “succeeding periods.” Succeeding imports concatenation and does not define duration. Geyer v. Lietzan, 230 Ind. 404, 409 (1952).
The legal bias against a perpetual lease is strong and overcomes language that suggests indefinite renewals or extensions. See Geyer, 230 Ind. at 408; Lattimore, 313 N.C. at 470-72; Gray v. Stadler, 228 Wis. 596, 600 (1938). The absence of a rent-escalation-upon-renewal clause in the 1954 Lease is very significant. While the “failure to include an escalation clause is not fatal” to a claim of perpetual renewal, Lonergan v. Connecticut Food Store, Inc., 168 Conn. 122, 127 (1975), the absence of an escalation clause suggests the parties did not intend to create a perpetual lease. See McLean, 316 F.Sup. at 827-28; Lonergan, 168 Conn, at 127-28. Such an inference is compelled from the facts at hand where Curtis Pine Grove annually collects over $100,000 from its subtenants but pays the owner the nominal rent of $400.[7] See Putts v. Springdale, 23 Ark.App. 182, 186-87 *556 (1988). In summary, the 1954 Lease did not create a perpetual lease.[8]
E. Once Is Enough
In the overwhelming number of cases which have considered, and rejected, whether the language of a particular lease created a lease in perpetuity, the reviewing court has determined that the lease may be renewed but once. See Lattimore, 313 N.C. at 471, and cases cited (generally “[a] covenant which in general terms provides for a right to renewals will be construed as granting only one renewal”). Such decisions have been rendered on the theory that a renewal clause necessitates the creation of a new lease upon the expiration of the term of the original lease and that the new lease cannot include a further renewal provision. See Marsylak v. Fox, 260 Mass. 127, 129 (1927); Rutland Amusement Co., Inc., 127 Vt. at 328. Other courts have limited the parties to a single renewal based on a reading of the lease in its entirety, resolving ambiguities in favor of a single renewal. See Pults, 23 Ark.App. at 186-88; Chessmasters, Inc. v. Chamoun, 948 So.2d 985, 986-88 (Fla.Dist.Ct.App. 2007). Then there are cases where the decision to permit but one renewal period seems to rest on matters of public policy, the same principles that are used to defeat perpetual leases. See Geyer, 230 Ind. at 411-12; Burke v. Permian Ford-Lincoln-Mercury, 95 N.M. 314, 316 (1981). This jurist is unaware of any recent Massachusetts precedents as to whether once is indeed enough.
The older cases in Massachusetts all follow the majority view, with little discussion, that if a lease contains an ill-defined renewal clause then the condition or option of renewal is satisfied with a single renewal period. The Cunningham case revolved around a renewal clause that provided: “And the said lessors do promise to renew said indenture for such further term as their leasehold estate in the premises may be renewed or extended.” Cunningham, 99 Mass. at 250. The Cunningham court found “the covenant to renew is not void for vagueness” and recognized the tenant’s right to a new lease “like the old one, with the same terms and stipulations; at the same rent and with the essential covenants.” Id. at 252. Nonetheless, the Cunningham court went on to say that “To this rule there is one exception, equally well established with the rule itself. The renewal covenant is not to be inserted in the new lease; that agreement is satisfied and exhausted by a single renewal.” Id. at 252-53.
In Lamson v. Coulson, 234 Mass. 288 (1920), the Supreme Judicial Court dealt with the issue as to whether a subtenant of a portion of the premises leased to the original tenant could enforce a covenant to renew the original lease. Ultimately, the court ruled against the subtenant. Id. at 296. In determining the landlord’s obligations under the renewal clause the court stated: “The covenant of renewal by the landlord by force of its very words imports a new lease like the old one in every essential particular, saving only a renewal covenant.” Id. at 295. Incidentally, Lamson was a case involving a fifty-year lease of land at Salisbury Beach.
The lease in Marsylak, 260 Mass, at 128, contained the following renewal clause: “Lessor gives lessee the option to renew this lease from year to year after the three year term expires at the same rental and without written notice.” The case turned on a factual issue as to whether proper notice of the exercise of the option was given. The court said that if proper notice was given, it was the owner’s obligation “to make, execute and deliver to the [tenant] a lease for a further term of one year. (Citation omitted.) The renewal covenant was not to be inserted." (Citing Cunningham at 252).
Historically Massachusetts has been squarely in the once-is-enough camp, joining the majority of jurisdictions that have considered the issue. See “Sufficiency of Provision of Lease to Effect Second or Perpetual Flight of Renewal,” 29 ALR4th 172-216. The case at hand presents no basis for departure by this court. Cunningham, Lamson and Marsylak are all cases wherein the lease contained a renewal clause as distinguished from a tenant’s right of extension. The 1954 Lease contained a renewal clause. In 2004, Curtis Pine sought to renew the Lease. The de facto extension of the Lease in 1979 does not distinguish this case from the rule set forth in the above mentioned decisions. The original parties to the 1954 Lease clearly intended to create what now exists on the property, a summer cottage colony. The Lease permits the construction of long-term improvements: buildings, a light and power system, sewage and water works. An occupancy period totaling fifty years accommodates such a purpose.[9]
ORDER
For the above stated reasons, it is ORDERED that Old Wharf Realty, LLC’s motion for partial summary judgment be ALLOWED, and that Curtis Fine Grove, Inc. and The Subtenant’s motions for summary judgment be DENIED. Further it is DECLARED that the 1954 Lease permits one extension or renewal period, that Curtis Fine Grove, Inc. extended the 1954 Lease on February 27, 1979 and that the 1954 Lease terminated on February 27, 2004.

The Curtises ultimately assigned their interest to Curtis Pine, a plaintiff in this action.

Ethel M. Chase, Arthur’s wife, was added as lessor.

After Arthur and Ethel Chase died, Carol Cummings inherited the property. Otter Trap became owner in 2004 and eventually conveyed it to Old Wharf after these actions commenced.

There is one additional undisputed fact established upon the court’s inquiry at the hearing on the motions. Curtis Pine currently collects over $ 100,000 in annual ground rents from *557 the subtenants but contends the owner is entitled to an annual rent of only $400.

Per the 1954 Lease Curtis Pine Grove is also liable for the real estate taxes.

A lease in perpetuity, expressly made, does not violate the rule against perpetuities. “[I]t is well settled in most other jurisdictions that, absent statutory provision to the contrary, the right to perpetual renewal of a lease is not forbidden by the law, either upon the ground that it creates a perpetuity or a restraint on alienation or upon any other ground, and such provisions, when properly entered into will be enforced.” Lonergan, 168 Conn, at 124. The rule against perpetuities does not apply because “the covenant to renew is considered part of the lessee’s present interest and because there are at all times persons in being who by joining together can convey the fee.” Lattimore, 313 N.C. at 470.

The court is aware of the few cases wherein two renewal periods have been crafted from the language of the lease and the unique circumstances of the particular case. See Syms v. New York, 105 N.Y. 153, 156 (1887); Schroeder v. Johnson, 696 So.2d 498 (Fla.Dist.Ct.App. 1997); Tucker v. Byler, 27 Ariz.App. 704, 705 (1976). On balance, the circumstances of our case do not favor two renewals over the single renewal preferred in the case law.